E-FILED
Thursday, 14 August, 2014  11:32:44 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| JONATHAN DANIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 CV 01232 |
| vs. | ) | |
| | ) | |
| THE CITY OF PEORIA, JIM ARDIS, | ) | |
| Mayor of Peoria, in his individual capacity; | ) | Honorable James E. Shadid |
| PATRICK URICH, City Manager of Peoria, | ) | Magistrate Judge Schanzle-Haskins |
| in his individual capacity; CHRISTOPHER SETTI, | ) | |
| Assistant City Manager of Peoria, in his | ) | |
| individual capacity; SAM RIVERA, Chief | ) | |
| Information Officer for the City of | ) | |
| Peoria, in his individual capacity; STEVEN | ) | |
| SETTINGSGAARD, former Chief of Police of the | ) | |
| Peoria Police Department, in his individual | ) | |
| capacity; Peoria Police Detectives JAMES | ) | |
| FEEHAN and STEVIE HUGHES, JR., in their | ) | |
| individual capacities, | ) | |
| Defendants. | ) | |

## DEFENDANTS CITY OF PEORIA, JIM ARDIS, PATRICK URICH, CHRISTOPHER SETTI, SAM RIVERA, STEVEN SETTINGSGAARD, JAMES FEEHAN, AND STEVIE HUGHES, JR.'S ANSWER TO COMPLAINT

Defendants City of Peoria, Jim Ardis, Patrick Urich, Christopher Setti, Sam Rivera,

Steven Settingsgaard, James Feehan, and Stevie Hughes, Jr. (hereinafter collectively

"Defendants"), by and through their attorney, JAMES G. SOTOS of THE SOTOS LAW FIRM,

P.C., in answer to Plaintiff's Complaint, state the following:

### I. INTRODUCTION

1.        This is a civil rights lawsuit.  Mr. Daniel charges a conspiracy to violate and the

violation of his rights under the First and Fourth Amendments to the United States Constitution

and of Article I, Sections 4 and 6 of the Illinois Constitution and brings his action pursuant to 42

U.S.C. §§ 1983 and 1988, 28 U.S.C. §2201 et seq., and the laws and constitution of the State of Illinois.  Mr. Daniel seeks declaratory and injunctive relief and monetary damages.

**ANSWER:**    Defendants admit that Plaintiff is advancing the allegations set forth in paragraph 1, but deny they engaged in any of the misconduct alleged and that they are liable to Plaintiff for declaratory and injunctive relief and monetary damages.

2.      From March 9 through March 19, 2014, Mr. Daniel tweeted from a Twitter account, @peoriamayor, which used a picture of Jim Ardis ("Ardis"), the mayor of Peoria, as the account's avatar.  Displeased with the content of the tweets, Defendants embarked on a plan to shut down the account and identify and punish its creator in violation of his constitutional rights. As part of Defendants' plan, Peoria Police Department officers searched Mr. Daniel's residence, seized his personal property, reviewed personal information on Mr. Daniel's electronic devices and in his mail, and arrested, detained, and interrogated Mr. Daniel purportedly for the crime of false personation of a public official.

**ANSWER:**    Defendants admit that from March 9 through March 19, 2014, Plaintiff tweeted from a twitter account, @peoriamayor, which used a picture of Defendant Ardis, the mayor of Peoria, as the account's avatar.  Defendants further admit that they pursued available legal means to shut down the account and to identify and pursue legal action against its creator.  Defendants deny that they embarked on a plan to violate Plaintiff's constitutional rights.  Defendants admit that, after obtaining appropriate warrants, Peoria Police Department officers searched Plaintiff's residence and seized certain of his personal property, and imaged certain personal information as a result.  Defendants deny that they arrested, detained and interrogated Plaintiff for the crime of false personation of a public official.

## II.  JURISDICTION AND VENUE

3.      This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

**ANSWER:**    Defendants admit the allegations contained in paragraph 3.

2

4.      Venue is proper in this judicial district pursuant to  28 U.S.C. § 1391.

**ANSWER:**   Defendants admit the allegations contained in paragraph 4.

### III. PARTIES

5.      Plaintiff Jonathan Daniel is 29 years old.  He is a U.S. Citizen and resident of

Peoria, Illinois.

**ANSWER:**   Defendants lack sufficient information or knowledge to either admit or deny the
allegations contained in paragraph 5.

6.      Defendant the City of Peoria ("the City") is a municipal corporation under the

laws of the State of Illinois and operates the Peoria Police Department.

**ANSWER:**   Defendants admit the allegations contained in paragraph 6.

7.      Defendant Jim Ardis ("Ardis") is now and at the time of the events complained of

herein was Mayor of Peoria.  He is sued in his individual capacity.

**ANSWER:**   Defendants admit Defendant Ardis is now and at the time of the events
complained of herein was Mayor of Peoria and that Plaintiff purports to sue
Defendant Ardis in his individual capacity.

8.      Defendant Patrick Urich ("Urich") is now and at the time of the events

complained of herein was City Manager of Peoria.  The City has delegated to Urich as City

Manager final policy making authority for all municipal departments, including the Peoria Police

Department.  *See* Peoria Municipal Code §§ 2-281 and 24-35 to -37; 65 ILCS 5/5-3-7.  He is

sued in his individual capacity.

**ANSWER:**   Defendants admit Defendant Urich is now and at the time of the events
complained of herein was City Manager of Peoria and that Plaintiff purports to
sue Defendant Urich in his individual capacity.  Defendants make no response to
the remaining legal conclusion contained in paragraph 8.

9.      Defendant Christopher Setti ("Setti") is now and at the time of the events

complained of herein was Assistant City Manager of Peoria.  He is sued in his individual

capacity.

**ANSWER:**     Defendants admit Defendant Setti is now and at the time of the events complained
of herein was Assistant City Manager of Peoria and that Plaintiff purports to sue
Defendant Setti in his individual capacity.

10.    Defendant Sam Rivera ("Rivera") is now and at the time of the events complained

of herein was Chief Information Officer for the City of Peoria.  He is sued in his individual

capacity.

**ANSWER:**     Defendants admit Defendant Rivera is now and at the time of the events
complained of herein was Chief Information Officer for the City of Peoria and
that Plaintiff purports to sue Defendant Rivera in his individual capacity.

11.    Defendant Steve Settingsgaard ("Settingsgaard") was at the time of the events

complained of herein Chief of Police of the Peoria Police Department.  He is sued in his

individual capacity.

**ANSWER:**     Defendants admit Defendant Settingsgaard was at the time of the events
complained of herein Chief of Police of the Peoria Police Department and that
Plaintiff purports to sue Defendant Settingsgaard in his individual capacity.

12.    Defendant James Feehan ("Feehan") and Stevie Hughes, Jr. ("Hughes") are now

and at the time of the events complained of herein were detectives in the Peoria Police

Department.  They are sued in their individual capacities.

**ANSWER:**     Defendants admit Defendants Feehan and Hughes are now and at the time of the
events complained of herein were detectives in the Peoria Police Department and
that Plaintiff purports to sue Defendants Feehan and Hughes in their individual
capacities.

13.    At all times relevant to this complaint, all Defendants were acting under color of

state law and their conduct constituted state action.

4

**ANSWER:**    Defendants admit that, at all times relevant, they were acting under color of law and that some of the actions they took could be construed as state action.

## IV. FACTS

***Illinois' False Personation Statute***

14.    Illinois' false personation statute, 720 ILCS 5/17-2, prohibits various types of false personation, which the statute divides into five categories: False personation for the purpose of soliciting a material benefit, 720 ILCS 5/17-2 (a), false personation of public officials and employees, 720 ILCS 5/17-2 (b), fraudulent advertisement of a corporate name, 720 ILCS 5/17-2 (c), producing, selling, and distributing false law enforcement badges, 720 ILCS 5/17-2 (d), and falsely representing oneself as having received a government medal, 720 ILCS 5/17-2 (e).  The statute provides that false personation may be accomplished through the internet or electronic communication under 720 ILCS 5/17-2 (a)(1) through (a)(7) and (e) only.  720 ILCS 5/17-2 (g).

**ANSWER:**    Defendants admit Plaintiff's description of the statute, except Defendants deny that the statute states that false personation may be accomplished through the internet or electronic communication only under 720 ILCS 5/17-2 (a)(1) through (a)(7) and (e).

15.    False personation of a public official, 720 ILCS 5/17-2 (b)(2), prohibits a person from "knowingly and falsely represent[ing] himself or herself to be . . . [a] public officer or a public employee or an official or employee of the federal government."

**ANSWER:**    Defendants admit the allegations contained in paragraph 15.

16.    Illinois' provision for false personation of a public official criminalizes only representations made in person.  Illinois courts require as an element of the offense that there be an intent to deceive the public that the impersonator is acting in the official capacity of a public official.  Application of Illinois' provision for false personation of a public official to speech

5

made without such an intent violates the First Amendment and Article I, Section 4 of the Illinois

State Constitution.

**ANSWER:**    Defendants deny that Illinois' provision for false personation of a public official states that it criminalizes only representations made in person. Defendants further deny that Illinois courts have required as an element of the offense of false personation of a public official that there be an intent to deceive the public that the impersonator is acting in the official capacity of a public official. Defendants lack sufficient information or knowledge to either admit or deny the allegations contained in the last sentence of paragraph 16.

### *Events of March and April 2014*

17.    On or around March 9, 2014, Mr. Daniel began posting tweets to a Twitter

account he created, @peoriamayor (the "Twitter account"), which used a picture of Ardis as the

account's avatar. The avatar's Twitter biography read "I am honored to serve the citizens of our

great city."

**ANSWER:**    Defendants admit the allegations contained in paragraph 17 and state further that the account's profile page displayed Defendant Ardis' actual email address and website. (*See* Group Ex. 1, attached hereto, Defendant Feehan's Affidavit ("Affidavit"), ¶¶ 3–4, and Affidavit Attachment A, Twitter Profile Page.)

18.    On or before March 12, 2014, Mr. Daniel added the words "parody account" to

the end of the Twitter account biography.

**ANSWER:**    Defendants admit the allegations contained in paragraph 18.

19.    The Twitter account—which juxtaposed the mayor's clean-cut image with a series

of tweets conveying in a crude or vulgar manner an exaggerated preoccupation with sex, drugs,

and alcohol—was a satiric form of expression protected by the First Amendment and the Illinois

Constitution. The Twitter account was not reasonably believable as conveying the voice or

message of the actual mayor. Mr. Daniel had no intention of deceiving people into believing the

6

account was actually operated by a representative of the mayor or the mayor himself, and no

reasonable person could conclude such an intent from the content of the tweets or the Twitter

account's profile page.

**ANSWER:**     Defendants lack sufficient information or knowledge to either admit or deny the
allegations contained in paragraph 19, except that Defendants deny that no
reasonable person could conclude that Plaintiff intended to deceive people into
believing his twitter account was actually operated by a representative of the
Mayor or the Mayor himself, and that no reasonable person could conclude such
an intent from the contents of the tweets or the twitter account profile page.  (*See*
Group Ex. 1, attached hereto, Affidavit Attachment A, Twitter Profile Page.)

20.     On or around March 11, 2014, Defendants Ardis, Urich, Setti, Rivera,

Settingsgaard, Feehan, and Hughes, communicated about the Twitter account, came to a meeting

of the minds, and agreed to shut it down and punish its creator.  In furtherance of this conspiring

agreement, Defendants engaged in the conduct set forth in paragraphs 21 through 49 below.

**ANSWER:**     Defendants deny the allegations contained in paragraph 20.

21.     From March 11, 2014 through April 18, 2014, Defendants Ardis, Urich, Setti,

Rivera, Settingsgaard, Brady, Feehan, and Hughes worked jointly and individually to have the

Twitter account shut down and to punish the creator of the accounts because Ardis and the other

defendants objected to the lawful, protected content of the tweets and because Ardis was

personally offended by the Twitter account.

**ANSWER:**     Defendants deny the allegations contained in paragraph 21.

22.     On March 11, 2014, Urich directed Rivera and Feehan to work to shut down the

Twitter account and find out the identity of its creator.  Rivera then contacted Twitter and

ordered the account be shut down, or that control of the account be given to the City.  In

response, Twitter requested Rivera upload a copy of a government-issued photo identification of

Ardis in order to demonstrate Rivera had authority to act on Ardis' behalf.  Rivera then asked

Setti to upload Ardis' driver's license, which he did.

**ANSWER:**   Defendants admit the allegations contained in paragraph 22, except Defendants deny that Defendant Rivera "ordered" the account be shut down.

23.   Also on March 11, 2014, Feehan began investigating whether the account violated

any criminal statutes, and concluded that it did not.  He communicated his conclusions to

Settingsgaard, who reported Feehan's findings to Ardis, Urich, and Rivera.

**ANSWER:**   Defendants admit that, on March 11, 2014, Defendant Feehan first investigated whether the account violated any criminal statutes, and preliminarily concluded that same day that it did not.  Defendants admit Defendant Feehan communicated his preliminary conclusions to Defendant Settingsgaard, who reported those findings to other Defendants.

24.   On March 12, 2014, Ardis directed Urich, Settingsgaard, and Rivera to act with a

"sense of urgency" with respect to shutting down the Twitter account.  Settingsgaard reported to

Urich he thought Rivera was handling the matter.  By the evening, Rivera had been unable to get

a response from Twitter, so Setti asked Settingsgaard if the police department could continue

working on shutting down the account and identifying who created it.

**ANSWER:**   Defendants admit the allegations contained in paragraph 24.

25.   On March 13, 2014 Settingsgaard asked Feehan if there was anything he could do

to speed up shutting down the account.  Feehan then tried to contact Twitter and resumed

investigating whether the account violated a criminal statute.  Feehan erroneously claimed that

the Twitter account violated Illinois' criminal prohibition of false personation of a public official

under 720 ILCS 5-17-2 (b)(2) [*sic*].  Settingsgaard then reported to Ardis and Urich that Feehan

had identified a statute which the Twitter account violated, the false personation statute, and

asked Ardis if he wanted to file a formal complaint and pursue prosecuting the creator of the

Twitter account.  Ardis reported that he "absolutely" wanted to prosecute.

**ANSWER:**   Defendants admit the allegations contained in paragraph 25, except Defendants lack sufficient information or knowledge to either admit or deny whether Defendant Feehan's claim that the account violated 720 ILCS 5/17-2(b)(2) was "erroneous."

26.     On or around March 14, 2014, Feehan, at Settingsgaard's direction, applied in the

Circuit Court of Peoria County for a warrant to obtain from Twitter evidence of the offense of

false personation.  Feehan did not have probable cause or any other lawful basis to apply for the

warrant.  A Peoria County Circuit Court judge issued the warrant and Defendants used the

warrant to obtain the internet protocol address ("IP address") use to connect to the Twitter

account.

**ANSWER:**   Defendants admit the allegations contained in paragraph 26, except Defendants deny that Defendant Feehan lacked probable cause or any other lawful basis to apply for the warrant.

27.     On March 17, 2014, Settingsgaard reported to Ardis and Urich that a warrant had

been issued and sent to Twitter.

**ANSWER:**   Defendants admit the allegations contained in paragraph 27.

28.     On March 20, 2014, Ardis and the City, in a letter to Twitter written by the

Interim Corporation Counsel for the City, threatened to file a federal lawsuit seeking an

injunction against Twitter to terminate the Twitter account.  Twitter suspended the Twitter

account that same day.

**ANSWER:**   Defendants admit the allegations contained in paragraph 28, except Defendants deny the characterization of the letter as "threatening."

9

29.     On or around March 29, 2014, Hughes applied in the Circuit Court of Peoria

County for a warrant to obtain from Comcast evidence of the offense of false personation.

Hughes did not have probable cause or any other lawful basis to apply for the warrant.  A Peoria

County Circuit Court judge issued the warrant to obtain evidence of false personation.

Defendants used the warrant to obtain the name and address of the subscriber associated with the

IP address used to connect to the Twitter account.

**ANSWER:**     Defendants admit that, on March 29, 2014, Defendant Hughes applied in the
Circuit Court of Peoria County for a warrant to obtain from Comcast evidence of
the offense of false personation.  Defendants further state that the warrant was
sought after Defendants had obtained, from Twitter, a response to the warrant
issued to Twitter, which provided the internet protocol and email addresses
associated with the suspect Twitter account. (*See* Group Ex. 1, attached hereto,
Affidavit, ¶¶ 4–10, and Affidavit Attachment B, Twitter Response.)  Defendants
deny that Defendant Hughes did not have probable cause or any other lawful basis
to apply for the warrant.  Defendants admit a Peoria County Circuit Court Judge
issued the warrant to Comcast to obtain evidence of false personation, and that
certain Defendants used the warrants to obtain the name and address of the
subscriber associated with the IP address used to connect to the Twitter account.

30.     On April 8, 2014, Ardis was informed that Comcast had returned information to

the police department in response to the warrant.

**ANSWER:**     Defendants admit that, at some point, Defendant Ardis was informed that
Comcast had returned information to the police department in response to the
warrant.

31.     On April 14, 2014, Ardis requested information from the police department on the

status of the investigation of the Twitter account.

**ANSWER:**     Defendants admit the allegations contained in paragraph 31.

32.     On or around April 15, 2014, Hughes applied in the Circuit Court of Peoria County for a warrant to search the premises identified by Comcast as the residence of the IP subscriber, 1220 N. University Street in Peoria ("the premises"), and seize evidence pertaining to the offense of false personation, including any electronic device which can store digital media, "books, papers, records, photographs, recordings, [and] documents," and any "cocaine, heroin, [and] drug paraphernalia."

**ANSWER:**     Defendants admit the allegations contained in paragraph 32.  Defendants further state affirmatively that the search warrant authorized the seizure of "cellular telephones." (*See* Ex. 2, attached hereto, Search Warrant.)

33.     On April 15, 2014, Defendants [*sic*] Hughes executed the search warrant for the premises.  Two of Mr. Daniel's roommates and two guests were at the premises when the police officers arrived to execute the search warrant.  A number of pieces of mail, as well as computers, telephones, and other electronic devices were seized, including Mr. Daniel's laptop, computer processor, and mail.

**ANSWER:**     Defendants admit the allegations contained in paragraph 33, except Defendants deny the description of and number of other individuals who were at the premises when the officers arrived, and further state affirmatively that other officers were present during the execution of the search warrant.

34.     At the time the search warrant was executed, Mr. Daniel was at his place of employment.

**ANSWER:**     Defendants lack sufficient information or knowledge to either admit or deny the allegations contained in paragraph 34.

35.     Shortly after his work shift had ended, Mr. Daniel received a telephone call from Hughes, who told Mr. Daniel that he needed to come to the station.  Mr. Daniel informed Hughes of his whereabouts and Hughes then directed two police officers to bring Mr. Daniel to the police

station.  Hughes did not have an arrest warrant, probable cause, or any other lawful basis to direct

the arrest [*sic*] Mr. Daniel.

**ANSWER:**    Defendants admit that after the warrant was executed, Defendant Hughes called
Plaintiff, but deny that Defendant Hughes told Plaintiff he "needed to come to the
station," and lack sufficient information or knowledge to either admit or deny that
the call occurred shortly after Plaintiff's work shift had ended.  Defendants admit
that Plaintiff informed Defendant Hughes of his whereabouts and that, after
Plaintiff agreed to come to the police station but stated that he needed a ride,
Defendant Hughes asked two Peoria police officers to pick Plaintiff up.
Defendants deny that Defendant Hughes directed the arrest of Plaintiff or that
Plaintiff was arrested, and further deny that they lacked probable cause or any
other lawful basis for their actions.  Defendants admit that Defendant Hughes did
not have an arrest warrant.

36.    When the police officers arrived at Mr. Daniel's place of employment, they

ordered Mr. Daniel to get in the police car, performed a pat-down search of Mr. Daniel, placed

him into the car, and brought him to the police station.  During this period, Mr. Daniel reasonably

believed he was not free to leave the officer's [*sic*] presence.

**ANSWER:**    Defendants deny that the police officers ordered Plaintiff to get in the police car
when they picked Plaintiff up at the bar he stated he worked at, and further deny
that Plaintiff reasonably believed he was not free to leave the officers' presence.
Defendants lack sufficient information or knowledge to either admit or deny the
allegation that the officers performed a pat down search of Plaintiff before driving
him to the police station.

37.    At the police station, Mr. Daniel was told he had to take everything out of his

pockets before entering an interrogation room.  Mr. Daniel emptied the contents of his pockets,

which included his cellular telephone, and placed the items on a chair in the station.  He was then

taken into an interrogation room.  Mr. Daniel reasonably believed he was not free to leave the

interrogation room or the police station.

**ANSWER:**    Defendants admit the allegations contained in paragraph 37, except Defendants
deny Plaintiff's characterization of the interview room as an interrogation room,

and further deny that Plaintiff reasonably believed he was not free to leave when he was at the police station.

38.     In the interrogation room, Hughes told Mr. Daniel that he wanted to talk to Mr. Daniel about impersonating a public official on social media.  Hughes then orally informed Daniel of his rights under *Miranda v. Arizona*.  Mr. Daniel invoked his right to an attorney and Hughes then left the room.

**ANSWER:**     Defendants admit the allegations contained in paragraph 38, except Defendants deny that Defendant Hughes "told Mr. Daniel that he wanted to talk to Mr. Daniel about impersonating a public official on social media."  Defendants further deny Plaintiff's characterization of the interview room as an interrogation room.

39.     Shortly thereafter Hughes returned to the room with Mr. Daniel's cellular telephone and ordered Mr. Daniel to power off the phone because it was being confiscated.  Mr. Daniel objected to the confiscation of his only phone, particularly because he used it to coordinate visits with his three and five year old sons and with his sick grandmother, who often called him when she needed help.  Hughes told Mr. Daniel he could not have his phone back, but that he was now free to leave.

**ANSWER:**     Defendants admit that Defendant Hughes advised Plaintiff that he would not be able to keep his phone, and admit that Defendant Hughes asked Plaintiff to turn the power off.  Defendants admit that Plaintiff objected to the seizure of the phone.  Defendants admit that Defendant Hughes advised Plaintiff he was free to leave.  Defendants lack sufficient information or knowledge to either admit or deny the remaining allegations contained in paragraph 39.

40.     In the evening of April 15, 2014, and again on April 16, 2014, Ardis communicated with Settingsgaard and affirmed his desire to prosecute whoever created the Twitter account.

**ANSWER:**     Defendants admit the allegations contained in paragraph 40.

13

41.     On April 17, 2014 Hughes applied in the Circuit Court of Peoria County for a warrant to search the contents of Mr. Daniel's cellular telephone for evidence of false personation and for a warrant to obtain from Google evidence of false personation in the email account associated with the Twitter account.  Hughes did not have probable cause or any other lawful basis to apply for either warrant.  A Peoria County Circuit Court judge issued both warrants.

**ANSWER:**     Defendants admit the allegations contained in paragraph 41, except Defendants deny that Defendant Hughes lacked probable cause or any other lawful basis to apply for either warrant.

42.     On information and belief, Hughes and Feehan thereafter searched Mr. Daniel's electronic devices for records of communications and other data.

**ANSWER:**     Defendants deny that Defendant Hughes searched Plaintiff's electronic devices. Defendants admit that Defendant Feehan imaged Plaintiff's cell phone, and that other electronic devices which may have belonged to Plaintiff may also have been imaged for subsequent review by detectives, but state affirmatively that the State's Attorney's Office indicated it would not be pursuing charges against Plaintiff before any such data was reviewed and that, as a result, it was determined that the data would not be reviewed.

43.     After being released from police custody, Mr. Daniel believed he would be charged and prosecuted for a crime for which he could serve up to a year in prison.  His relationships with his roommates were strained because of the search of the premises and the seizure of his roommates' property.  He worried police officers would view highly personal digital photographs, written electronic documents, and texts on his laptop, computer, and telephone.

**ANSWER:**     Defendants lack sufficient information or knowledge to either admit or deny the allegations contained in paragraph 43.

44.     Mr. Daniel was forced to not visit with his children on April 18 and 19 because he feared his children would witness his arrest.  He believed he might have to leave Peoria because Defendants had shown they would take illegal actions against him and he feared they would continue to do so in retaliation for the Twitter account.

**ANSWER:**     Defendants lack sufficient information or knowledge to either admit or deny the allegations contained in paragraph 44.

45.     Mr. Daniel learned he would not be charged with a crime when it was reported in the Peoria Journal Star on April 23, 2014.  The Peoria Journal Star article stated that the State's Attorney of Peoria County decided not to prosecute Mr. Daniel for false personation of a public official.  The State's Attorney stated that Mr. Daniel's conduct did not violate the statute because false personation of a public official under 720 ILCS 5/17-2 (b)(2) had to be done in person and the statute could not be violated over the Internet or through electronic communication.

**ANSWER:**     Defendants admit the allegations contained in paragraph 45, except that Defendants lack sufficient information or knowledge to either admit or deny Plaintiff's allegations that he learned he would not be charged with a crime when it was reported in the Peoria Journal Star on April 23, 2014.

46.     After learning he would not be charged with a crime, Mr. Daniel twice went to the police station to request the return of his property.  His requests were denied.  On April 24, 2014 Mr. Daniel's counsel made a demand by email to Ardis and Settingsgaard for the immediate return of Mr. Daniel's property.  Mr. Daniel's personal property was returned to him on or around May 2, 2014.

**ANSWER:**     Defendants admit the allegations contained in paragraph 46, except Defendants lack sufficient information or knowledge to either admit or deny that Plaintiff twice went to the police station to request return of his property.

15

47.    Each of the Defendants personally participated in the unlawful conduct described herein which deprived Mr. Daniel of his constitutional rights, acted jointly and in concert with the other Defendants who participated in or acquiesced to the unlawful conduct, failed to intervene or stop other Defendants from engaging in the unlawful conduct though possessing the power to do so, or knew of and condoned or approved of the unlawful conduct.

**ANSWER:**    Defendants deny the allegations contained in paragraph 47.

48.    Each Defendant acted knowingly and intentionally, willfully and wantonly, or with reckless or callous disregard for, or with deliberate indifference to Mr. Daniel's rights.

**ANSWER:**    Defendants deny the allegations contained in paragraph 48.

49.    Defendants' unlawful conduct described herein directly and proximately caused Mr. Daniel's mental and emotional distress, loss of appetite, insomnia, anxiety, discomfort, damage to reputation, and deprivation of his constitutional rights.

**ANSWER:**    Defendants deny the allegations contained in paragraph 49.

50.    Defendants' unlawful conduct described herein directly and proximately caused Mr. Daniel the loss of opportunity to engage in expression during the period when his cell phone and other electronic devices were confiscated.

**ANSWER:**    Defendants deny the allegations contained in paragraph 50.

51.    Because Defendants Ardis, Urich, and Settingsgaard continue to maintain publicly that the actions taken against Mr. Daniel were lawful and proper, Mr. Daniel remains in danger of being punished for exercising his right to free expression if he engages in the future in speech that is derogatory towards the mayor.

**ANSWER:**    Defendants deny the allegations contained in paragraph 51.

52.     Mr. Daniel has no adequate remedy at law and is irreparably harmed in that he wishes to be able to parody, satirize, and otherwise engage in humorous expression about the mayor and the City of Peoria in the future—including through the use of risqué language—but is chilled from doing so because he reasonably fears retaliation from Defendants if he engages in such protected expression.

**ANSWER:**     Defendants deny the allegations contained in paragraph 52.

## V1. CLAIMS FOR RELIEF

### COUNT ONE:

53.     The allegations of paragraphs 1 through 52 are realleged and incorporated by reference as if fully set forth herein.

**ANSWER:**     Defendants hereby incorporate their answers to paragraphs 1 through 52 of Count One as if fully set forth herein.

54.     The actions of the Defendants described herein violate the rights of Mr. Daniel to freedom of expression as guaranteed by the First Amendment of the United States Constitution.

**ANSWER:**     Defendants deny the allegations contained in paragraph 54.

### COUNT TWO:

55.     The allegations of paragraphs 1 through 54 are realleged and incorporated by reference as if fully set forth herein.

**ANSWER:**     Defendants hereby incorporate their answers to paragraphs 1 through 54 of Count Two as if fully set forth herein.

56.     The actions of the Defendants described herein violate the rights of Mr. Daniel to be free from unreasonable searches, seizures, and invasions of privacy guaranteed by the Fourth Amendment of the United States Constitution.

**ANSWER:**     Defendants deny the allegations contained in paragraph 56.

## COUNT THREE:

57.     The allegations of paragraphs 1 through 56 are realleged and incorporated by

reference as if fully set forth herein.

**ANSWER:**     Defendants hereby incorporate their answers to paragraphs 1 through 56 of Count
Three as if fully set forth herein.

58.     The actions of the Defendants described herein violate the rights of Mr. Daniel to

speak, write, and publish freely as guaranteed by Article I, Section 4 of the Illinois Constitution.

**ANSWER:**     Defendants deny the allegations contained in paragraph 58.

## COUNT FOUR:

59.     The allegations of paragraphs 1 through 58 are realleged and incorporated by

reference as if fully set forth herein.

**ANSWER:**     Defendants hereby incorporate their answers to paragraphs 1 through 58 of Count
Four as if fully set forth herein.

60.     The actions of the Defendants described herein violate the rights of Mr. Daniel to

be free from unreasonable searches, seizures, and invasions of privacy as guaranteed by Article I,

Section 6 of the Illinois Constitution.

**ANSWER:**     Defendants deny the allegations contained in paragraph 60.

## COUNT FIVE:

61.     The allegations of paragraphs 1 through 60 are realleged and incorporated by

reference as if fully set forth herein.

**ANSWER:**     Defendants hereby incorporate their answers to paragraphs 1 through 60 of Count
Five as if fully set forth herein.

18

62.     The actions of the Defendants described herein constitute a conspiracy that caused the violation of Mr. Daniel's right to freedom of expression and freedom from unreasonable searches, seizures, and invasions of privacy as guaranteed by the First and Fourth Amendments of the United States Constitution.

**ANSWER:**     Defendants deny the allegations contained in paragraph 62.

WHEREFORE, Defendants request that this Court enters judgment in their favor and against Plaintiff and grant such further relief as this Court deems just and proper.

Dated: August 14, 2014                          /s/ James G. Sotos
                                                JAMES G. SOTOS,  Atty No. 06191975
                                                *One of the Attorneys for Defendants City of Peoria,*
                                                *Jim Ardis, Patrick Urich, Christopher Setti, Sam*
                                                *Rivera, Steven Settingsgaard, James Feehan, and*
                                                *Stevie Hughes, Jr.*

James G. Sotos
THE SOTOS LAW FIRM, P.C.
550 East Devon, Suite 150
Itasca, Illinois 60143
T: (630) 735-3300
F: (630) 773-0980
jsotos@jsotoslaw.com

## AFFIRMATIVE DEFENSES

Defendants City of Peoria, Jim Ardis, Patrick Urich, Christopher Setti, Sam Rivera, Steven Settingsgaard, James Feehan, and Stevie Hughes, Jr., by and through their attorney, JAMES G. SOTOS of THE SOTOS LAW FIRM, P.C., assert the following affirmative defenses to Plaintiff's Complaint:

1.      With regard to Plaintiff's Fourth Amendment claim, Defendants have qualified immunity from liability for the damages claimed by Plaintiff because Defendants did not violate any clearly established constitutional rights of which a reasonable person would have known.

2.      With regard to Plaintiff's First Amendment claim, Defendants have qualified immunity from liability for the damages claimed by Plaintiff because Defendants did not violate any clearly established constitutional rights of which a reasonable person would have known.

3.      With regard to Plaintiff's First and Fourth Amendment claims, Defendants had probable cause for all of the challenged actions.

4.      With regard to Plaintiff's state constitutional claims, Defendants possessed probable cause for all of the challenged actions.

5.      Defendant City of Peoria is not liable to pay punitive or exemplary damages.  745 ILCS 10/2-102.

6.      Defendant City of Peoria is not liable for any injury resulting from an act or omission of its employee where the employee is not liable.  Defendants Ardis, Urich, Setti, Rivera, Settingsgaard, Feehan, and Hughes deny that they committed any act or omission which caused injuries to Plaintiff.  745 ILCS 10/2-109.

7.      Defendants are not liable for claims alleged under state law because a public employee serving in a position involving the determination of policy or the exercise of discretion

is not liable for any injury resulting from his acts or omissions in determining policy when acting in the exercise of such discretion, even though abused.  745 ILCS 10/2-201.

8.      Defendants are not liable for claims alleged under state law because a public employee is not liable for his acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct.  745 ILCS 10/2-202.

9.      Defendants are not liable for claims alleged under state law because a public employee who acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable is not liable for any injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable.  745 ILCS 10/2-203.

10.      Defendants are not liable for claims alleged under state law for any injury caused by the acts or omissions of another person.  745 ILCS 10/2-204.

11.      Defendants are not liable for claims alleged under state law for injury caused by the instituting or prosecuting of any judicial proceeding within the scope of Defendants' employment, unless Defendants acted maliciously and without probable cause.  745 ILCS 10/2-208.

12.      Defendants are not liable for claims alleged under state law because a public employee acting within the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission.  745 ILCS 10/2-210.

13.      Defendants are not liable to pay punitive or exemplary damages for an alleged injury arising out of an act or omission occurring within the scope of their employment while serving in a position involving the determination of policy or the exercise of discretion when the

alleged injury is the result of an act or omission occurring in the performance of any legislative, quasi-legislative or quasi-judicial function, even though abused.  745 ILCS 10/2-213.

14.     To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of Plaintiff as reflected in the public record, any verdict or judgment obtained by Plaintiff must be reduced by an amount commensurate with the degree of fault attributed to Plaintiff by a jury in this case.

WHEREFORE, Defendants request that this Court enters judgment in their favor and against Plaintiff and grant such further relief as this Court deems just and proper.


Dated: August 14, 2014                        /s/ James G. Sotos_____
                                              JAMES G. SOTOS,  Atty No. 06191975
                                              *One of the Attorneys for Defendants City of Peoria, Jim Ardis, Patrick Urich, Christopher Setti, Sam Rivera, Steven Settingsgaard, James Feehan, and Stevie Hughes, Jr.*

James G. Sotos
THE SOTOS LAW FIRM, P.C.
550 East Devon, Suite 150
Itasca, Illinois 60143
T: (630) 735-3300
F: (630) 773-0980
jsotos@jsotoslaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the following is true and correct, that on August 14, 2014, I electronically filed **Defendants City of Peoria, Jim Ardis, Patrick Urich, Christopher Setti, Sam Rivera, Steven Settingsgaard, James Feehan, and Stevie Hughes, Jr.'s Answer to Plaintiff's Complaint** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attached service list.


Dated: August 14, 2014                    /s/ James G. Sotos _____
                                          JAMES G. SOTOS,  Atty No. 06191975
                                          *One of the Attorneys for Defendants City of Peoria,*
                                          *Jim Ardis, Patrick Urich, Christopher Setti, Sam*
                                          *Rivera, Steven Settingsgaard, James Feehan, and*
                                          *Stevie Hughes, Jr.*


James G. Sotos
THE SOTOS LAW FIRM, P.C.
550 East Devon, Suite 150
Itasca, Illinois 60143
T: (630) 735-3300
F: (630) 773-0980
jsotos@jsotoslaw.com

**SERVICE LIST**
*Daniel  v. City of Peoria, et al.*
**Case No.: 14 CV 01232**

*Attorneys for Plaintiff Jonathan Daniel*
Harvey Grossman
Karen A. Sheley
Roshni C. Shikari
Roger Baldwin Foundation of ACLU, Inc.
180 N. Michigan Ave, Suite 2300
Chicago, IL 60601
T: (312) 201-9740
F: (312) 288-5225
hgrossman@aclu-il.org
ksheley@aclu-il.org
rshikari@aclu-il.org

Marc O. Beem
Miller Shakman & Beem LLP
180 N. LaSalle Street, Suite 3600
Chicago, IL 60601
T: (312) 263-3700
F: (312) 263-3270
mbeem@millershakman.com

*Attorney for Defendants City of Peoria, Jim Ardis, Patrick Urich, Christopher Setti, Sam*
*Rivera, Steven Settingsgaard, James Feehan, and Stevie Hughes, Jr.*
Ronald D. O'Neal, Jr.
City of Peoria
419 Fulton Street, Room 200
Peoria , IL 61602
T: (309) 494-8590
F: (309) 494-8559
roneal@ci.peoria.il.us