## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| JONATHAN DANIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 CV 01232 |
| vs. | ) | |
| | ) | |
| THE CITY OF PEORIA, JIM ARDIS, | ) | |
| Mayor of Peoria, in his individual capacity; | ) | Honorable James E. Shadid |
| PATRICK URICH, City Manager of Peoria, | ) | Magistrate Judge Schanzle-Haskins |
| in his individual capacity; CHRISTOPHER SETTI, | ) | |
| Assistant City Manager of Peoria, in his | ) | |
| individual capacity; SAM RIVERA, Chief | ) | |
| Information Officer for the City of | ) | |
| Peoria, in his individual capacity; STEVEN | ) | |
| SETTINGSGAARD, former Chief of Police of the | ) | |
| Peoria Police Department, in his individual | ) | |
| capacity; Peoria Police Detectives JAMES | ) | |
| FEEHAN and STEVIE HUGHES, JR., in their | ) | |
| individual capacities, | ) | |
| Defendants. | ) | |

**DEFENDANTS CITY OF PEORIA, JIM ARDIS, PATRICK URICH, CHRISTOPHER
SETTI, SAM RIVERA, STEVEN SETTINGSGAARD, JAMES FEEHAN, AND
STEVIE HUGHES, JR.'S MEMORANDUM OF LAW IN SUPPORT OF
RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**

### INTRODUCTION

Plaintiff's civil rights Complaint ("Complaint") against Defendants City of Peoria, Jim

Ardis, Patrick Urich, Christopher Setti, Sam Rivera, Steven Settingsgaard, James Feehan, and

Stevie Hughes, Jr. (hereinafter collectively "Defendants"), arises from Plaintiff's creation and use

of a "Twitter" account to impersonate Defendant Ardis, the Mayor of the City of Peoria, via the

Internet.  Defendants believed Plaintiff had violated 720 ILCS 5/17-2(b), which prohibits a

person from falsely personating a public official.  Accordingly, Defendants applied for and

obtained search warrants for evidence, and questioned Plaintiff at the police station.  The Peoria

County State's Attorney, however, concluded the false personation of a public official statute could only be violated in person, and not over the Internet or through electronic communication. As a result, Plaintiff was not charged with the offense.

In his Complaint, Plaintiff alleges Defendants violated his First and Fourth Amendment rights (Counts I and II) and his rights under Article I, Sections 4 and 6 of the Illinois Constitution (Counts III and IV). The Complaint further alleges a claim for conspiracy (Count V). Plaintiff fails to state any cognizable claims, however, because Defendants had probable cause or, at the very least, "arguable" probable cause to believe Plaintiff had violated Illinois' false personation statute, to apply for the search warrants, and to search Plaintiff's residence and electronic devices. Moreover, the presence of probable cause or "arguable" probable cause defeats Plaintiff's retaliatory arrest claim. Absent these underlying claims, Plaintiff's conspiracy claim necessarily fails. Lastly, Plaintiff's state constitutional claims fail because the Illinois Supreme Court has not recognized a private cause of action for alleged violations of these rights. For these reasons, Defendants are entitled to judgment on the pleadings.

## STATEMENT OF ALLEGED FACTS

On or about March 9, 2014, Plaintiff created the Twitter account "@peoriamayor".[1] (Dkt. 1, Compl. ¶¶ 2, 17, 19; *see also* Group Ex. 1 to Defendants' Answer to Complaint ("Answer"), Defendant Feehan's Affidavit ("Affidavit") and Affidavit Attachment A, Twitter Profile Page.)

---

[1] Twitter is defined by Wikipedia as "an online social networking and microblogging service that enables users to send and read short 140- character text messages, called tweets." en.wikipedia.org/wiki/Twitter. "Tweets are publicly visible by default but senders can restrict message delivery to just their followers." (*Id.)*

The account's avatar[2] was a picture of Defendant, City of Peoria Mayor Jim Ardis.  The avatar's Twitter biography read, "I am honored to serve the citizens of our great city," and the Profile Page listed Defendant Ardis' actual email and website addresses. (*Id.*)  That same day, Plaintiff began posting "tweets," which purported to be Defendant Ardis crudely trumpeting his preoccupation with and participation in various illegal acts, including use of illegal narcotics and patronizing of prostitutes.  (*Id.*)

After learning of the account, all Defendant officials allegedly agreed, on or about March 11, 2014, to shut it down, and discover and punish the creator. (Dkt. 1, Compl. ¶ 20.)[3]  That same day, Defendant Feehan began investigating whether the account violated any criminal laws, initially concluded it did not, and so advised other Defendants.  (*Id.* at ¶ 23.)  Also, Defendant Rivera contacted Twitter on the 11th and allegedly "ordered" the account be shut down, or control be given to the City of Peoria.[4]  (*Id.* at ¶ 22.)  Twitter responded that Defendant Rivera needed to upload identification demonstrating his authority to act on behalf of Defendant Ardis, and Defendant Setti then supplied Twitter with a copy of Defendant Ardis' driver's license. (*Id.*)

The following day, March 12, Plaintiff added the words "parody account" to the end of the account's biography. (*Id.* at ¶ 18.)  On March 13, Defendant Feehan communicated to certain co-Defendants that the Twitter account violated 720 ILCS 5/17-2(b) (*id.* at ¶25), which provides:

---

[2]  Wikipedia describes an avatar in computing as "the graphical representation of the user or the user's alter ego or character." en.wikipedia.org/Wiki/Avatar_(computing).

[3]  The Defendants are Mayor Ardis, City Manager Urich, Assistant City Manager Setti, Chief Information Officer Rivera, former Chief of Police Settingsgaard, and police detectives Feehan and Hughes, Jr.  The Complaint also mentions a "Brady" as part of the conspiracy (¶ 21), which presumably refers to Peoria County State's Attorney Gerald Brady, though Brady is not a named Defendant.

[4]  The Complaint does not explain how Defendant Rivera could "order" Twitter to do anything.

> False personation; public officials and employees.  A person commits a
> false personation if he or she knowingly and falsely represents himself or
> herself to be any of the following: (2) a public officer or a public employee
> or an official or employee of the federal government.

A first time violation of the statute is a Class A misdemeanor.  720 ILCS 5/17-2(f)(3).

On March 14, Defendant Feehan applied for and secured a warrant to "obtain from Twitter evidence of the offense of false personation." (Dkt. 1, Compl. ¶ 26.)  Plaintiff alleges "Feehan did not have probable cause or any other lawful basis to apply for the warrant." (*Id.*)  Plaintiff does not allege Defendant Feehan intentionally or recklessly falsified or withheld key facts from the court.  (*See id.*)

On March 20, Twitter suspended the account after Defendant Ardis, through Peoria's interim corporation counsel, threatened to seek a federal injunction if Twitter did not voluntarily comply. (*Id.* at ¶ 28.)  One week later, on or about March 27, Twitter responded to the warrant and supplied Defendants with the IP internet protocol ("IP")[5] and email addresses associated with the account, the latter being jondani1235@gmail.com.  (*See* Group Ex. 1 to Answer, Affidavit and Affidavit Attachment B, Twitter Response.)  Armed with that information, Defendant Hughes, on March 29, applied for and obtained a second warrant directing Comcast to disclose the name and address of the subscriber associated with the IP address. (Dkt. 1, Compl. ¶ 29.)  Plaintiff again alleges Defendant Hughes lacked "probable cause or any other lawful basis to apply for the warrant[,]" but does not allege he intentionally or recklessly falsified or withheld

---

[5]  Wikipedia describes an IP address as "a numerical label assigned to each device (*e.g.*, computer, printer) participating in a computer network that uses the Internet for communication. An IP address serves two principal functions: host or network interface identification and location addressing." en.wikipedia.org/wiki/IP_address.  IP addresses can thus be used to identify the computer that uses a certain network and the location of that computer.

any material facts from the court.  (*See id*.)

After obtaining Plaintiff's address from Comcast, Defendant Hughes, on April 15, applied for a third warrant, this time requesting authority to search the subject premises and seize evidence "pertaining to the offense of false personation, including any electronic device which can store digital media, 'books, papers, records, photographs, recordings, [and] documents[.]'" (*Id*. at ¶ 32.)  This time, Plaintiff does not allege probable cause was lacking for Defendant Hughes to apply for the search warrant, and he again does not complain that Defendant Hughes intentionally or recklessly falsified or withheld any material facts from the court.  (*See id.*)

On April 15, the court issued the warrant,[6] which was executed by Defendant Hughes and other unnamed officers that day.  (*Id*. at ¶ 33.)  Several items were seized, including "mail, . . . computers, telephones, and other electronic devices[.]"  (*Id.*)  Following the search, Defendant Hughes called Plaintiff, who was at work when the warrant was executed, and told him he "needed to come to the station." (*Id.* at ¶¶ 34–35.)  Plaintiff does not overtly allege he was arrested, but instead states that Defendant Hughes "directed two police officers to bring [him] to the police station[,]" though Defendant Hughes lacked "an arrest warrant, probable cause or any other lawful basis to direct the arrest[.]" (*Id.* at ¶ 35.)  Plaintiff further alleges the officers "ordered [him] to get in the police car, performed a pat-down search . . ., placed him into the car, and brought him to the police station[,]" during which period he believed he was not free to leave.  (*Id.* at ¶ 36.)

At the police station, Plaintiff contends he was ordered to empty his pockets and his cell

---

[6] The warrant also specifically authorized the seizure of "cellular telephones." (*See* Ex. 2 to Answer, Search Warrant.)

phone was confiscated, after which he was taken to an interrogation room from which he reasonably did not believe he could leave. (*Id.* at ¶ 37.) After being read his *Miranda* rights, Plaintiff invoked his right to an attorney and was allowed to leave. (*Id.* at ¶¶ 38–39.)

On April 17, 2014, Defendant Hughes applied for and obtained a fourth warrant from the Circuit Court of Peoria County, this time permitting a search of Plaintiff's cell phone, and then a fifth warrant to Google for any evidence of false personation in the e-mail account associated with the Twitter account. (*Id.* at ¶ 41.) Plaintiff again alleges Defendant Hughes lacked "probable cause, or any other lawful basis to apply for either warrant" but not that he falsified or withheld any material facts from the court. (*Id.*) He further alleges that Defendants Hughes and Feehan searched his electronic devices. (*Id.* at ¶ 42.)

Plaintiff learned on April 23 he would not be charged with a crime because the Peoria County State's Attorney concluded the false personation of a public official statute could only be violated in person, and not over the Internet or through electronic communication. (*Id.* at ¶ 45.) Finally, Plaintiff alleges his requests for return of his property were twice denied, and ultimately delayed, for a little over one week. (*Id.* at ¶ 46.)

**STANDARDS GOVERNING MOTIONS FOR JUDGMENT ON THE PLEADINGS**

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standards as a Rule 12(b)(6) motion to dismiss. *Adams v. Indianapolis,* 742 F.3d 720, 727–28 (7th Cir. 2014). To survive dismissal, Plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While factual allegations are

accepted as true, "allegations in the form of legal conclusions are insufficient" to avoid dismissal. *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal,* 556 U.S. at 678). The Court must view the facts in the light most favorable to the plaintiff, (*GATX Leasing Corp. v. Nat'l Union Fire Ins., Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995)), but it is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim[.]" *R.J.R. Services., Inc. v. Aetna Cas. and Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989).

In resolving the motion, the Court considers "the complaint, the answer, and any written instruments attached as exhibits." *Hous. Auth. Risk Retention Group, Inc., v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004); *see also* Ex. A, *Kelley v. Civil Criterion Catalysts & Techs. L.P.*, 2013 WL 5754926, at *1 (N.D. Ind. Oct. 23, 2013) (explaining that a court's assessment of a Rule 12(c) motion should include consideration of the exhibits attached to the Answer); FED. R. CIV. P. 10(c) (stating that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

## I.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE PLEADINGS ESTABLISH PROBABLE CAUSE, AND THERE WAS NO CLEARLY ESTABLISHED CONSTITUTIONAL VIOLATION.

### A.   General Standards for Qualified Immunity

Qualified immunity insulates government officials from suit unless they violate a statutory or constitutional right that was clearly established. *Ashcroft v. al-Kidd,* 131 S. Ct. 2074, 2080 (2011). The two-part test for qualified immunity focuses on whether the facts make out a violation of a constitutional right, and if so, whether the right at issue was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court can first decide whether the pleadings make out a constitutional violation, or skip that step, and

simply determine whether any constitutional violation was clearly established.  *Id.* at 236.

To be clearly established, the right must be sufficiently clear that "every reasonable official would [have understood] that what he is doing violates that right." *Ashcroft*, 131 S. Ct. at 2083 (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).  In other words, it is not enough that a right is clearly established in a general sense; rather, a plaintiff must demonstrate that the law was clear "in relation to the specific facts confronting the public official when he acted." *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013) (quoting *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir. 1987)).  Stated another way, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft,* 131 S. Ct. at 2083.

Because it is an immunity from suit, and not just damages, qualified immunity should be decided as early in a case as possible.  *Pearson*, 555 U.S. at 231–32.  Indeed, the "driving force" behind qualified immunity was the desire to ensure that insubstantial claims against public officials are resolved prior to discovery.  *Id.* (citing *Anderson,* 483 U.S. at 640 n.2).  As a result, qualified immunity may be decided on a motion to dismiss.  *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994).  The burden is on the plaintiff to defeat qualified immunity.  *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001).

**B.    The Fourth Amendment Claims are Defeated by Probable Cause and Qualified Immunity.**

The Fourth Amendment's protection against unreasonable searches or seizures "is not implicated until an actual search or seizure takes place, such as when the police actually enter a home or seize its occupants."  Ex. B, *Estate of O'Bryan v. Town of Sellersburg*, 2004 WL 1234215, at *9 (S.D. Ind. May 20, 2004).   Defendants will address each of the possible Fourth

Amendment "events" Plaintiff may be alleging, and explain how the presence of probable cause, or alternatively, "arguable" probable cause, defeats each claim.

### 1.    Probable Cause Supported the Search Warrants to Twitter and Comcast.

First, Plaintiff alleges Defendants lacked "probable cause or any lawful basis" to seek the initial search warrants, which resulted in Twitter disclosing the IP and email addresses associated with the account, and Comcast later disclosing the subscriber information (name and address) associated with the IP address. (Dkt. 1, Compl. ¶¶ 26, 29.)  But Defendants' decision to seek search warrants for this information erects formidable obstacles to Plaintiff's effort to hold Defendants civilly liable.[7]  When a search is conducted pursuant to a warrant, public officials who secured the warrant can be held civilly liable only if they intentionally or recklessly falsified or withheld material facts from the judge.  *Whitlock v. Brown*, 596 F.3d 406, 410–11 (7th Cir. 2010); *United States v. Sims*, 551 F.3d 640, 645 (7th Cir. 2008).  This requirement recognizes that a police officer cannot be held civilly liable for a neutral judicial officer's determination of probable cause unless the officer who requested the warrant has corrupted the integrity of the court's decision-making process by deliberately misrepresenting or manipulating the facts.  But Plaintiff makes no contention that Defendants falsified or withheld key facts from the judge.[8]  As a result, Defendants are entitled to judgment on the pleadings.

_____

[7]  Had they chosen to, Defendants likely could have sought and obtained the IP and email addresses from Twitter, and the subscriber information from Comcast, through a subpoena, rather than a warrant, without offending the Fourth Amendment.  *See generally Electronic Evidence Compliance—A Guide for Internet Service Providers*, 18 BERKELEY TECH. L.J. 945 (2003).

[8]  If Plaintiff had made such an allegation, the court would then have to assess whether the remainder of the available information established probable cause. *See, e.g.*, *United States v. Sanders*, 743 F.3d 471,474 (7th Cir. 2014).

Alternatively, qualified immunity provides public officials with substantial protections when they take action in reliance on search warrants.  In *Malley v. Briggs*, 475 U.S. 335 (1986), the Supreme Court equated a police officer's entitlement to qualified immunity when relying on a warrant with the good faith exception to the exclusionary rule.  *See Wollin v. Gondert*, 192 F.3d 616, 624 (7th Cir. 1999).  As a result, "qualified immunity in a warrant case can rest on an inquiry into whether a reasonably well-trained officer would have known that the search was illegal despite the judge's authorization."  *Draine v. Bauman,* 708 F. Supp. 2d 693, 707 (N.D. Ill. 2010).  That inquiry cannot be resolved against the officer unless:

> (1) A materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.

*Id.* (citing *United States v. Harju*, 466 F.3d 602, 607 (7th Cir. 2006)).

Plaintiff's Complaint does not even begin to approach this standard.  It acknowledges that the applicable statute criminalizes impersonation of a "public official."  (Dkt. 1, Compl. ¶¶ 14-15. )  It  further acknowledges Plaintiff's Twitter account was titled "@peoriamayor" and used a picture of Defendant Ardis as the account avatar.  (*Id*. at ¶ 17.)  Plaintiff also alleges the Twitter biography read: "I am honored to serve the citizens of our great city[,]" *(id.)* and that the account was not labeled a "parody" until after Defendants had already been alerted to its existence and had begun investigating.  (*Id.* at ¶¶ 18, 20–23.)  Research has not uncovered a single case indicating such conduct would not violate a false personation statute, and such a determination

can hardly be viewed as "obvious."[9]  At bottom, even if this Court were to disagree with the circuit court judge's determination of probable cause, that still would not warrant dismissal of Defendants' motion because Plaintiff has not alleged Defendants corrupted the integrity of the court's decision-making process.  As a result, probable cause to believe Plaintiff impersonated Defendant Ardis through his Twitter account in violation of 720 ILCS 5/17-2(b) is apparent on the face of the Complaint, and alternatively, his constitutional claims are barred by the doctrine of qualified immunity.

### 2.    Probable Cause Supported the Search Warrant for Plaintiff's Residence.

Absent an exigency, warrants are generally required to search a home to comply with the Fourth Amendment.  *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).  Here, the Complaint recognizes Defendants sought and secured a search warrant for Plaintiff's residence and for the seizure of various items therein.  (Dkt. 1, Compl. ¶ 32.)  But unlike the search warrants to Twitter and Comcast, Plaintiff does not even allege the warrant for his house was unsupported by probable cause.  (*See id.* at ¶¶ 32–34.)  Whether this omission was deliberate is beside the point because, as with the Twitter and Comcast warrants, the presence of probable cause could not be any plainer from the pleadings.  Indeed, when Defendants obtained the search warrant for Plaintiff's residence, they knew not only that someone had created a twitter account

---

[9]  To the contrary, the most closely analogous case Defendants were able to locate upheld a criminal conviction for false personation.  *See, e.g.*, Ex. C, *Clear v. Superior Court*, 2010 WL 2029016, at *2–3 (Ct. Cal. App. 4th Dist. May 24, 2010) (unpublished) (defendant created "Myspace" web page in name of pastor with posts purporting to be pastor discussing his homosexual activity and narcotics use).  *See also* Ex. D., *People v. Golb*, 2014 WL 1883943 (Ct. App. N.Y. May 13, 2014) (affirming false personation  conviction of defendant who impersonated and discredited his father's business competitors through emails sent out over the Internet).

which purported to be that of Defendant Ardis, and which appeared to violate Illinois law, but they further knew the email account associated with the account, jondani1235@gmail.com, was strikingly similar to Plaintiff's name—Jonathan Daniel—and that the account was created from a computer device at the address where Plaintiff resided.  Probable cause that the search would yield further evidence of false personation was plainly present.

Alternatively, as with the warrants to Twitter and Comcast, principles of qualified immunity defeat Plaintiff's claim.  Research has not uncovered a single case which has invalidated a warrant under similar circumstances and, in light of the facts described above, it cannot be plausibly argued that any reasonably well-trained officer would have known that probable cause was lacking and that he never should have applied for the warrant.

### 3.   Probable Cause to Arrest Defeats Plaintiff's False Arrest Claim.

Plaintiff's Complaint hedges on whether he was actually arrested, alleging only that Defendant Hughes sent two officers to retrieve him after telling him he needed to come to the station, and that, once in their presence, he reasonably did not feel free to leave.  (Dkt. 1, Compl. ¶¶ 35–36.) On the other hand, Plaintiff acknowledges that, after he invoked his right to an attorney, Defendants allowed him to leave the station. (*Id.* at ¶¶ 38–39.)

Assuming Plaintiff was arrested, no Fourth Amendment violation occurred because an arrest supported by probable cause does not violate the Fourth Amendment, regardless whether authorities first obtained an arrest warrant.  Indeed, it is well-established that "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest[.]"  *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).  Police officers have probable cause to arrest when the facts and circumstances within their knowledge and of which

they have reasonable trustworthy information are sufficient to warrant a prudent person in

believing a suspect has committed an offense.  *Id.; see also Kelley v. Myler*, 149 F.3d 641, 646

(7th Cir. 1998).  The court evaluates probable cause objectively—that is, whether a reasonable

officer would have believed the person committed the crime.  *Kelley*, 149 F.3d at 646.  If the test

is satisfied, "the arrest is lawful even if the belief would have been mistaken." *Id.*  Thus, probable

cause has been described as a zone within which reasonable mistakes are excused.  *Id.*  Probable

cause to arrest should be determined as a matter of law on the pleadings where the undisputed

facts establish probable cause and obviate the need for further proceedings.  Ex. E, *Horton v.

Schultz*, 2010 WL 1541265, at *2–3 (N.D. Ill. April 16, 2010); *see also Schor v. City of Chicago*,

576 F.3d 775, 778–79 (7th Cir. 2009); *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439 (7th Cir.

1986).

Alternatively, even absent probable cause, qualified immunity plays a prominent

role in the context of a false arrest claim and provides public officials with an added layer of

protection if a reasonable officer could have believed probable cause was present.  *Hunter v.

Bryant,* 502 U.S. 224, 227 (1991).  A public official is entitled to dismissal of a false arrest claim

if he at least had "arguable" probable cause, such that a reasonable officer possessing the same

information "could have reasonably believed that probable cause existed." *Humphrey v. Staszak,*

148 F.3d 719, 725 (7th Cir. 1998); s*ee also* Ex. F, *Smith v. Lamz*, 2002 WL 458986, at *1 (N.D.

Ill. Mar. 22, 2002) (finding qualified immunity based on "arguable" probable cause to arrest

plaintiff for impersonating a peace officer), *aff'd by* 321 F.3d 680 (7th Cir. 2003).  Plaintiff can

only overcome this obstacle by identifying closely analogous cases which establish the type of

conduct Plaintiff engaged in did not constitute false personation, or by showing it was "obvious"

his conduct did not violate the statute.  *See, e.g.*, *Brokaw v. Mercer County,* 235 F.3d 1000, 1022 (7th Cir. 2000).

As demonstrated above, when Plaintiff contends he was arrested, Defendants knew that someone who lived at Plaintiff's address with an email address of jondani1235@gmail.com had created a Twitter account which purported to be that of the mayor of the city of Peoria, and that an Illinois law specifically criminalized the false personation of an Illinois public official.  Thus, Defendants plainly possessed probable cause to arrest Plaintiff for a violation of the statute, and at a minimum, they certainly possessed "arguable" probable cause for the arrest.

Plaintiff's Complaint points out that the State's Attorney declined criminal charges because the statute did not apply to impersonation via the Internet.  (Dkt. 1, Compl. ¶ 45.)  However, the statute does not say that.  Though such an interpretation is arguably supported, though not compelled by, the omission of the subsection pertaining to public officials from the list of subsections which expressly do apply to internet impersonations, such as law enforcement officers or airline employees, (*see* 720 ILCS 5/17-2(g)), Defendants' alleged failure to determine the application of a defense to a criminal charge does not detract from probable cause.  *See United States v. Osborn,* 120 F.3d 59, 63 (7th Cir. 1997) ("[I]n assessing probable cause, an arresting officer is not required to anticipate that the suspect may be able to raise a defense to the charge that has not been clearly established in the courts.").  Rather, it is plain enough for probable cause that the challenged conduct comfortably fits within the language of the statute.

Alternatively, Defendants also had probable cause or "arguable" probable cause to arrest Plaintiff for a violation of 720 ILCS 5/17-2(a)(2.5)(A), which criminalizes a false personation of any person with the intent to "injure."  That section of the false personation statute specifically

applies to false personations over the Internet (*see* 720 ILCS 5/17-2(g)).  Whether it was

Plaintiff's intent, as he now alleges, to merely satirize, rather than injure, Defendant Ardis in his

professional and personal reputation is not something that would have been obvious to any law

enforcement officer investigating the case and, accordingly, is not something that would have

undermined the presence of probable cause or "arguable" probable cause.  *See, e.g.*, Ex. C, *Clear*

*v. Superior Court*, 2010 WL 2029016, at *2–3 (Ct. Cal. App. 4th Dist. May 24, 2010)

(unpublished) (upholding conviction despite defendant's contention that his impersonation of

pastor on "Myspace"[10] web page discussing his purported drug usage and homosexual activities

was merely a joke, but that defendant was also mad at pastor's treatment of defendant's sister).

Probable cause being apparent on the pleadings as a matter of law, Plaintiff's Fourth Amendment

challenge to his arrest must be dismissed.[11]

### 4. The Confiscation and Search of Plaintiff's Phone Complied with the Fourth Amendment.

Plaintiff alleges that, at the police station, he was ordered to empty his pockets and his cell

phone was confiscated, (Dkt. 1, Compl. ¶ 37), after which Defendant Hughes secured a warrant

authorizing a search of Plaintiff's phone.  (*Id.* at ¶ 41.)  Again, Plaintiff alleges Defendant Hughes

lacked "probable cause, or any other lawful basis to apply for either warrant" but not that he

falsified or withheld any material facts from the court.  He further alleges Defendants searched his

---

[10]  "Myspace" has been described as the most visited social networking site in the world from 2005 until early 2008. en.wikipedia.org/wiki/Myspace.

[11]  That Defendants had not specifically identified a potential violation of subsection (a)(2.5)(A) is of no moment.  "[P]robable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges[.]"  *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) (emphasis in original).

devices.  (*Id*. at ¶ 42.)  These allegations potentially implicate the Fourth Amendment on two levels—first, through the seizure of the phone, and second, the decision to apply for the warrant. Nonetheless, as with the other searches and seizures Plaintiff challenges, the seizure and search of the cell phone did not violate the Fourth Amendment, and alternatively, those acts were not so plainly unconstitutional as to circumvent Defendants' entitlement to qualified immunity.

Initially, Plaintiff's allegation that he was arrested, in conjunction with the presence of probable cause for that arrest, (*see supra*, Section I (B)(3) above), defeats Plaintiff's challenge to the initial seizure of the phone pursuant to *Chimel v. California*, 395 U.S. 752 (1969).  In *Chimel*, the Court held that the Fourth Amendment allows officers to conduct a warrantless search of an arrestee's person to check for weapons and prevent destruction of evidence.  *Id.* at 763.  Plus, just several weeks ago, the Supreme Court confirmed that officers may temporarily secure cell phones in order to prevent the destruction of evidence while they seek a warrant to search the phone for further evidence.  *Riley v. California*, 134 S. Ct. 2473, 2486, 2493–95 (2014).  Thus, Plaintiff cannot plausibly contend that the officers' decision to keep the phone pending their obtaining of a warrant was an unreasonable seizure.[12]

Moreover, at the time of Defendants' actions, it was unclear whether Defendants even needed a warrant to search the phone.  Indeed, in 2012, the Seventh Circuit held that searching an arrestee's cell phone in order to identify its cell phone number was a valid warrantless search incident to arrest. *United States v. Flores-Lopez*, 670 F.3d 803, 808–10 (7th Cir. 2012).  In so

---

[12]  Plaintiff does not allege any delay between the seizure of the phone and the application for the search warrant independently violated the Fourth Amendment.  *Cf. United States. v. Burgard*, 675 F.3d 1029, 1032 (7th Cir. 2012) (explaining that delay between warrantless seizure and securing of search warrant can itself violate the Fourth Amendment).

holding, the court left open the question how much more intrusive the search would have to be before a warrant must be obtained. *Id.* at 810. In *Riley*, decided two months *after* the Defendants' actions here, the Supreme Court clarified that concerns over possible destruction of evidence did not justify dispensing with the warrant requirement for phone searches because "officers could have seized and secured [the] cell phones to prevent destruction of evidence while seeking a warrant[,]" which is precisely what Defendants did here. *See Riley*, 134 S. Ct. at 2486.

Viewed against that backdrop, Defendants would have been entitled to qualified immunity even if they had not obtained a warrant prior to searching Plaintiff's phone, based on the legal uncertainties of their actions at the time they seized the phone. *See, e.g.*, *Kiddy-Brown v. Blagojevich,* 408 F.3d 346, 353 (7th Cir. 2005) (explaining that Plaintiff must point to "closely analogous cases decided prior to the defendants' challenged actions" to demonstrate a clearly established constitutional violation). The fact that Defendants did obtain a warrant before conducting any search effectively ends any basis for debate on the legality of their actions.

**C.** **The Presence of Probable Cause, or "Arguable" Probable Cause, Entitles Defendants to Qualified Immunity on Plaintiff's First Amendment Claim.**

Count I alleges Defendants intended to retaliate against Plaintiff for exercising his First Amendment right to free expression. (Dkt. 1, Compl. ¶ 53.) The presence of probable cause, or "arguable" probable cause, defeats Plaintiff's free speech claims based on qualified immunity.

The Supreme Court held several years ago that the presence of probable cause bars claims alleging a plaintiff was prosecuted in retaliation for exercising his First Amendment rights. *See Hartman v. Moore*, 547 U.S. 250, 265–66 (2006). Since *Hartman* was decided, the federal courts have struggled to determine whether it extends to claims of retaliatory arrests, such as the claim

alleged here.  *See Thayer v. Chiczewski*, 705 F.3d 237, 253 (7th Cir. 2012) (explaining that the law is unsettled on whether *Hartman* extends to retaliatory arrest cases, and the Seventh Circuit has not decided the issue).  The Supreme Court was presented with the question in 2012, but declined to answer it, instead concluding that qualified immunity barred the claim in any event because it was not clearly established that the presence of probable cause did not bar a First Amendment claim alleging retaliatory arrest.  *Reichle v. Howards*, 132 S. Ct. 2088, 2093, 2096–97 (2012).  Here, too, the Court need not address whether the presence of probable cause is an absolute bar to a retaliatory arrest claim because, under principles of qualified immunity, it was not clearly established that probable cause did not defeat such a claim.

Similarly, any claim that the various search warrants were sought in retaliation against Plaintiff's free speech cannot survive Defendants' qualified immunity defense.  Research has not uncovered a single case which permitted a plaintiff to circumvent the Fourth Amendment standards governing the issuance of warrants by casting his cause of action under the First, rather than Fourth, Amendment.  Accordingly, the absence of any clearly established cause of action for retaliatory issuance of a warrant where probable cause was present, and where a plaintiff failed to allege the requesting officer corrupted the issuing judge's decision-making processes, requires judgment on the pleadings in favor of Defendants based on qualified immunity.

## II.   THE ABSENCE OF AN UNDERLYING CONSTITUTIONAL CLAIM REQUIRES THE DISMISSAL OF PLAINTIFF'S CONSPIRACY CLAIM.

The absence of a valid underlying constitutional claim precludes Plaintiff's conspiracy claim.  *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011); *Indianapolis Minority Contractors Ass'n, Inc. v. Wiley,* 187 F.3d 743, 754 (7th Cir. 1999).

**III.   NO DIRECT CAUSE OF ACTION IS AVAILABLE FOR PLAINTIFF'S CLAIMS UNDER THE ILLINOIS CONSTITUTION, ARTICLE I, SECTIONS 4 AND 6.**

Plaintiff also raises parallel Illinois constitutional claims which contend Defendants' acts violated his rights to "speak write, and publish freely" and to be free from "unreasonable searches, seizures, [and] invasions of privacy" under Article I, Sections 4 and 6, respectively.  However, every federal district and Illinois appellate court decision to address the issue has held that, because there is no self-executing language in the Bill of Rights contained in Article I,[13] the Illinois Supreme Court would not recognize a private cause of action for alleged violations of those rights.  *See, e.g.*, Ex. G, *Bonnstetter v. City of Chicago,* 2014 WL 3687539, at *6 (N.D. Ill. July 24, 2014) (collecting cases); *Teverbaugh ex rel. Duncan v. Moore,* 724 N.E.2d 225, 229 (Ill. App. Ct. 1st Dist. 2000).

**CONCLUSION**

For the foregoing reasons, judgment on the pleadings should be entered in favor of Defendants.


Dated: August 14, 2014                          /s/ James G. Sotos_____
                                                JAMES G. SOTOS,  Atty No. 06191975
                                                *One of the Attorneys for Defendants City of Peoria,*
                                                *Jim Ardis, Patrick Urich, Christopher Setti, Sam*
                                                *Rivera, Steven Settingsgaard, James Feehan, and*
                                                *Stevie Hughes, Jr.*


James G. Sotos
THE SOTOS LAW FIRM, P.C.
550 East Devon, Suite 150
Itasca, Illinois 60143
T: (630) 735-3300
F: (630) 773-0980
jsotos@jsotoslaw.com

---

[13]   The only exception is Article I, Section 17, prohibiting discrimination in employment and in the sale or rental of property, which contains express language that those "rights are enforceable without action by the General Assembly[.]"

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the following is true and correct, that on August 14, 2014, I electronically filed **Defendants City of Peoria, Jim Ardis, Patrick Urich, Christopher Setti, Sam Rivera, Steven Settingsgaard, James Feehan, and Stevie Hughes, Jr.'s Memorandum of Law in Support of Rule 12(c) Motion for Judgment on the Pleadings** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attached service list.


Dated: August 14, 2014      /s/ James G. Sotos       
               JAMES G. SOTOS,  Atty No. 06191975
               *One of the Attorneys for Defendants City of Peoria,*
               *Jim Ardis, Patrick Urich, Christopher Setti, Sam*
               *Rivera, Steven Settingsgaard, James Feehan, and*
               *Stevie Hughes, Jr.*


James G. Sotos
THE SOTOS LAW FIRM**, P.C.**
550 East Devon, Suite 150
Itasca, Illinois 60143
T: (630) 735-3300
F: (630) 773-0980
jsotos@jsotoslaw.com

**SERVICE LIST**
***Daniel  v. City of Peoria, et al.***
**Case No.: 14 CV 01232**

***Attorneys for Plaintiff Jonathan Daniel***
Harvey Grossman
Karen A. Sheley
Roshni C. Shikari
Roger Baldwin Foundation of ACLU, Inc.
180 N. Michigan Ave, Suite 2300
Chicago, IL 60601
T: (312) 201-9740
F: (312) 288-5225
hgrossman@aclu-il.org
ksheley@aclu-il.org
rshikari@aclu-il.org

Marc O. Beem
Miller Shakman & Beem LLP
180 N. LaSalle Street, Suite 3600
Chicago, IL 60601
T: (312) 263-3700
F: (312) 263-3270
mbeem@millershakman.com

***Attorney for Defendants City of Peoria, Jim Ardis, Patrick Urich, Christopher Setti, Sam Rivera, Steven Settingsgaard, James Feehan, and Stevie Hughes, Jr.***
Ronald D. O'Neal, Jr.
City of Peoria
419 Fulton Street, Room 200
Peoria , IL 61602
T: (309) 494-8590
F: (309) 494-8559
roneal@ci.peoria.il.us