E-FILED
Wednesday, 17 December, 2014  05:23:21 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JONATHAN DANIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 14-CV-1232 |
| v. | ) | |
| | ) | Judge James E. Shadid |
| THE CITY OF PEORIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' SUPPLEMENTAL RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

# I.    INTRODUCTION

Defendants assert in their Rule 12(c) motion and supporting memorandum that they are immune from suit pursuant to the doctrine of qualified immunity.  [D.E. 18 & 19.]  Defendants make the inherently factual claim that they had probable cause or so-called "arguable" probable cause to seek the issuance of several warrants that led to: (i) a prior restraint on Plaintiff's right to freedom of speech; and (ii) the unreasonable search and seizure of his property.  [D.E. 1, p. 2.]

Plaintiff, as a matter of right, filed an Amended Complaint ("AC") [D.E. 28] adding an additional defendant, Sonni Williams, as well as factual allegations of the material omissions and misrepresentations Defendants made in order to obtain their improperly issued warrants [*id.*, ¶ 51a-g].  Plaintiff also added counts for violation of the Privacy Protection Act, 42 U.S.C. § 2000aa(a) and (b) (1980) (Count Six) and various state law tort claims (Counts Seven–Eleven), and additional facts to support those claims.

Plaintiff also filed his corrected Opposition to Defendants' Motion for Judgment on the Pleadings.  [D.E. 44.]  The parties have stipulated to stand on and incorporate by reference their previous briefs [D.E. 19 & 44] and file supplemental briefs addressing new matters raised by the AC.

Defendants filed their "Supplemental Motion for Judgment on the Pleadings" addressing the new matters on November 17, 2014.  [D.E. 36 & 37.]  In their supplemental motion and supporting memorandum, Defendants address some, but not all, aspects of Plaintiff's new claims, but, as detailed below, Defendants' arguments are ultimately unsuccessful.  First, the claim that defendant Sonni Williams should be granted *Noerr-Pennington* immunity is unsuccessful because Williams' conduct falls within the sham exception to the *Noerr-Pennington* doctrine.  Second, Defendants' arguments that probable cause rendered their otherwise unconstitutional warrant application omissions harmless misunderstands both the false

personation statute and police officers' ongoing obligation to re-assess probable cause in the face of clarifying facts.   Third, Plaintiff has properly pled a Privacy Protection Act claim and Defendants are not insulated by any statutory exemptions.   Finally, contrary to Defendants' contentions, Plaintiff has properly pled all of the elements of his state tort claims.

## II.   ARGUMENT

### A.   Defendants' Motion For Judgment on the Pleadings Cannot Resolve the Entire Case.

Despite forty pages of argument, Defendants fail to address the glaring fact that their qualified immunity argument, even if accepted by the Court, will not dispose of the entire case. Defendants' First Amendment arguments are based only on qualified immunity, which does not apply to the City of Peoria.   Additionally, qualified immunity does not apply to any of Plaintiff's injunctive claims nor does it apply to claims regarding Defendants' conduct of threatening Twitter to close Plaintiff's account.   [*See* D.E. 34 p. 4.]

### B.   Williams' Threat of Litigation Is Not Entitled to *Noerr-Pennington* Immunity.

The AC alleges that defendant Sonni Williams, the Interim Corporation Counsel for the City of Peoria, participated in the Defendants' scheme to shut down Plaintiff's Twitter account and in furtherance of that scheme she wrote a letter to Twitter in which she

> threatened to file a federal lawsuit seeking an injunction against Twitter to terminate the Twitter account . . . [and] stated that the account was being "investigated for a criminal violation of the Illinois Criminal Code, false personation of public official prescribed in 735 ILCS 5/17-2(b)(2)."   [D.E. 34, ¶ 35.]

Williams' letter did not bother to articulate on what legal grounds the City intended to file a federal lawsuit against Twitter, aside from a vague reference to defamation in William's claim that Plaintiff's tweets were "damaging to Mayor Jim Ardis' reputation" and were made "with the knowledge that such statements are false or with reckless disregard of whether statements are

false or not." [*Id.*]  Twitter suspended the Twitter account the same day it received Williams' letter.  [*Id.*]

Williams moves to dismiss the AC against her because, she asserts, her conduct constituted petitioning activity protected by the First Amendment and she is immune from any liability for that conduct under the *Noerr-Pennington* doctrine.  She is wrong.  Even if Williams conduct could otherwise come within the scope of the *Noerr-Pennington* doctrine's treatment of litigation conduct as petitioning activity protected by the First Amendment, it is divested of any such protection because it is unquestionably a sham.[1]

As Defendants correctly state in their Supplemental Memo, the *Noerr-Pennington* doctrine recognizes that litigation activity is protected by the First Amendment's right to petition the government, and cannot, therefore, generally give rise to any sort of liability, unless it is a sham.  *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 841 (2011).  But even if Williams' threatening letter qualified as litigation activity protected by *Noerr Pennington*,[2] the immunity does not extend to the "sham" litigation threatened here.  Litigation (or threatened litigation) is a "sham" if it is objectively and subjectively baseless.  Litigation is "objectively

---

[1] Williams, as an agent of the City of Peoria, should not be entitled to *Noerr-Pennington* protection.  Although the Seventh Circuit has stated that municipalities may claim such immunity, *New W. L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007), it has subsequently questioned that holding.  In *Swetlik v. Crawford*, 738 F. 3d 818, 829 (7th Cir. 2013), cited by Defendants [D.E. 37, p. 3], the court expressly declined to follow Judge Easterbrook's concurrence, also cited by Defendants [*id.*], which would have dismissed the plaintiff's claims against a municipal officials on *Noerr-Pennington* grounds.  Judge Easterbrook noted in his concurrence that the Fifth Circuit has determined that municipal officials are not entitled to *Noerr-Pennington* immunity, and the majority expressly left the issue for another case.  *Id.* at 825 n.2.

[2] The protections of *Noerr-Pennington* should not apply where, as here, Williams did not file suit and did not set out any coherent theory on which a suit against Twitter could have been based.  Rather, she simply sent a letter threatening an injunction.  The Seventh Circuit has not addressed, and the other circuits are split, on the question of whether the doctrine protects pre-litigation activity outside the antitrust context.  *See, e.g., Cardtoons, L.C. v. Major League Baseball Players Assn.*, 208 F.3d 885, 891-92 (10th Cir. 2000).  By sending a threatening letter to a private company, Twitter, Williams was not "petitioning the government" in any way, shape or form.  As a result, the protections of *Noerr-Pennington* should not apply.

baseless" if no reasonable litigant could realistically expect success on the merits." *Professional Real Estate Investors, Inc. v. Columbia Pictures*, 508 U.S. 49, 60 (1993). Litigation is "subjectively baseless" if the defendant's intent was not to win a lawsuit, but to directly interfere with plaintiff's protected interests through the litigation process.[3] *Id.* Plaintiff's allegations adequately allege that both components of a sham exist in this case.

A *Noerr-Pennington* defense is fact intensive, and generally cannot be determined at the pleading stage. Whether someone is immune, or whether their actions place them under one of the *Noerr-Pennington* exceptions, "is a question of fact." *Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1253 (9th Cir. 1982), *cert. denied* 459 U.S. 1227 (1982); *Wabash Pub. Co. v. Flanagan*, 89 C 1923, 1990 WL 19977 (N.D. Ill. Feb. 27, 1990) (citing *Clipper Express*). Several District Court cases in this Circuit have refused to decide *Noerr-Pennington* immunity on a motion to dismiss because such fact-intensive inquiries are not appropriate at that stage of the litigation. *See, e.g.*, *Shield Technologies Corp. v. Paradigm Positioning, LLC*, 11 C 6183, 2012 WL 4120440 (N.D. Ill. Sept. 19, 2012) ("Moreover, the application of the [*Noerr-Pennington*] doctrine is a question of fact that we will not resolve on a motion to dismiss."); *New West L.P. v. City of Joliet*, 05 C 1743, 2012 WL 366733 (N.D. Ill. Jan. 30, 2012) (Defendant's motion to dismiss on *Noerr-Pennington* immunity grounds was premature because "Whether [defendant] is shielded turns on . . . factually intricate questions

---

[3] Defendants' suggestion at Supplemental Memo at 6, n. 5 that even false representations are protected by *Noerr-Pennington* is wrong. Of the cases cited there, *Swetlik, New West, L.P.* and *Frederickson* all involved lobbying, as opposed to litigation activity. As recognized in *Mercatus v. Lake Forest Hospital, supra.,* at 842 – 844, *the* First Amendment's protection of lobbying activity is broader than in litigation. Unlike lobbying, parties forfeit *Noerr-Pennington* immunity when they make knowingly false representations in the litigation context. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972) ("There are many other forms of illegal and reprehensible practice which may corrupt the administrative or judicial processes and which may result in antitrust violations. Misrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process."); *Mercatus v. lake Forest Hospital*, 641 F.3d at 842 ("fraudulent misrepresentations" are a *Noerr-Pennington* sham exception for litigation activity).

[that] do not lend themselves to disposition on a motion to dismiss."); *see also Affordable Hous.*
*Dev. Corp. v. City of Fresno,* 433 F.3d 1182, 1190 (9th Cir. 2006) (same); *White v. Lee,* 227 F.3d
1214, 1220 (9th Cir. 2000) (same).

    That said, should the court wish to resolve this issue on the pleadings, Plaintiff has
sufficiently alleged that the federal lawsuit threatened by Williams would have been objectively
baseless.  First, as demonstrated in Plaintiff's prior Response and below, Plaintiff's tweets were
parody of a public figure and were protected by well-established First Amendment law.  No
reasonable litigant could have expected a court to find that that they constituted a violation of the
Illinois false personation statute.  And even if the tweets did violate the False Personation Act
(which they unquestionably did not), that would not be a basis for an injunction against Twitter
requiring it to close Plaintiff's account.  *New York Times Co. v. United States,* 403 U.S. 713, 714
(1971) ("Any system of prior restraints of expression comes to this Court bearing a heavy
presumption against its constitutional validity." (quoting *Bantam Books, Inc. v. Sullivan*, 372
U.S. 58, 70 (1963)).  Moreover, nothing in Plaintiff's tweets could have been grounds for a
lawsuit *against Twitter* by the City or Mayor Ardis because the Communications Decency Act
(the "CDA") bars such a claim.  47 U.S.C. §230(c)(1); *see also Klayman v. Zuckerberg*, 753 F.3d
1354, 1357 (D.C. Cir. 2014) (holding social media site Facebook immune from injunctive and
damages claims of negligence and assault arising from offending Facebook posts); *Dart v.*
*Craigslist*, 665 F. Supp. 2d 961, 963, 969-70 (N.D. Ill. 2009) (dismissing injunctive and damages
suit against internet service provider Craigslist under CDA immunity because Craigslist is not
the "speaker of information created by its users" and did not induce the speaker to engage in
illegal conduct).

Section 230(c)(1) of the CDA provides broad protection for internet services that host and make accessible to others content that is provided by others.  It provides that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  Twitter is a provider of an "interactive computer service."[4]  [D.E. 28, ¶ 22 & n.1.]  Plaintiff was the information content provider of the tweets that he authored and posted.[5]  Twitter could not be treated as the publisher of those tweets, and even if the tweets were unlawful under Illinois law (which they were not), Twitter was not responsible for their content and no suit could be brought against Twitter to require the account to be closed.  *Chicago Lawyers Committee for Civil Rights Under Law v. Craigslist*, 519 F.3d 666, 671 (7th Cir. 2008) (immunizing Craigslist even where the posted speech was unlawful); *Hadley v. Gatehouse Media,* 2012 WL 2866463 (N.D. Ill. 2012).

Because the threatened litigation against Twitter was objectively baseless, and Plaintiff has sufficiently pled that it was subjectively baseless, Williams' motion for Judgment on the Pleadings on the basis of *Noerr-Pennington* immunity must be denied.  As to the subjective component, Plaintiff pled that Williams acted in bad faith [D.E. 28, ¶ 57] in compliance with Rule 9 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 9 ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally").  While it remains to be proven that Williams threat was subjectively baseless, that is a fact-specific question that cannot be determined at the pleading stage.  Having established that the threat of litigation was objectively without merit, Plaintiff is entitled to explore whether Williams' subjective intent was

---

[4] "The term "interactive computer service" means any information service, system or access software provider that provides or enables computer access by multiple users to a computer server. . . "47 U.S.C. §230(f)(2).

[5] "The term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. §230(f)(3).

not to win a lawsuit, but to directly interfere with plaintiff's First Amendment right to parody the Mayor.  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 60-61 (1993).

### C. Defendants' Material Omissions and Misrepresentations Violated Plaintiff's Fourth Amendment Rights.

Defendants made several material misstatements and omissions in their warrant applications in violation of Plaintiff's Fourth Amendment right to freedom from unreasonable search and seizure.  *See Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010) ("intentionally or recklessly withholding exculpatory facts that would have influenced the warrant-issuing judge's probable cause finding" negates probable cause); *see also* D.E. 34, pp. 24-26 (discussing Defendants' omissions in detail).   In their supplemental memo, Defendants unsuccessfully question the materiality of some, but not all, of their misrepresentations.

### 1. Defendants Do Not Dispute the Materiality of Several Omissions and Misrepresentations.

Defendants do not dispute the materiality of the following omissions from the warrant applications: that Plaintiff's account was a parody, and that the account was not "verified."[6] Defendants likewise do not dispute the materiality of the following inflammatory misrepresentations, which were made without any supporting evidence: that officers were searching for violations of "child pornography laws" and for the presence of "cocaine, heroin, [and] drug paraphernalia" [D.E. 37, pp. 6-8].   These uncontested misrepresentations and omissions alone establish violations of Plaintiff's Fourth Amendment rights.

---

[6] A "verified" Twitter account is one that has been authenticated by the public figure to whom the account purports to belong.  [D.E. 34, pp. 24-25.]  The fact that Plaintiff's account was not "verified" corroborates it parodic rather than official nature.

    2.    **Defendants Repeated Failures to Inform the Warrant-Issuing Judges That Plaintiff Clearly Labeled His Account A "Parody" Were Material Omissions.**

Defendants also failed to disclose in their Comcast, Google, house, and phone warrant applications that Plaintiff had clearly marked his account as a parody.  Unable to dispute they would not have had probable cause absent this omission, Defendants argue instead that their omission was inconsequential because Plaintiff did not place the parody label on the account until three days after creating it and that Defendants had probable cause to believe that Plaintiff committed a crime of false personation in those three days.  [D.E. 37, pp. 6-8.]  These arguments misapprehend both the false personation statute and Defendants' continuing duty to reevaluate probable cause in light of clarifying facts.

Even in the three days that Plaintiff's account was not labeled a parody, Defendants had no probable cause to believe that Plaintiff violated the false personation statute, which requires a specific intent to deceive that Plaintiff never possessed.  *See People v. Thoennes*, 334 Ill. App. 3d 320, 327 (Ill. App. 4th 2002) ("[a]n actor or Halloween masquerader" pretending to be a police officer would not violate the statute because "[t]here is no conscious intent on either's part to deceive the public that they are acting in the official capacity of a police officer."); *People v. Farmer*, 350 Ill. Dec. 978, 984 (Ill App. 1st 2011).  [D.E. 19, pp. 8-18, D.E. 37, pp. 6-8.]  As previously discussed, [D.E. 34, pp. 4-5, 21-22], Plaintiff's intent was consistently and clearly parodic, both before and after adding the parody label.  From Day 1 Plaintiff intended his tweets to be parody and never intended to deceive anyone into believing that Mayor Ardis was actually tweeting from that account.  The outrageous, inflammatory, and clearly parodic content of Plaintiff's tweets prior to his labelling the Twitter account a parody confirms his innocuous intent.  [D.E. 28, ¶¶ 18-24; *see, e.g.*, ¶ 23 (prior to Plaintiff's labeling the account parody, while Mayor Ardis was presiding over a city council meeting, Plaintiff sent several tweets, including

"Well today sucked balls so ya already know what tonights bout … smoking crack Rivvvveeeerrrmmennn style.")].   The Mayor may not have found the tweets funny, but parody was Plaintiff's obvious intent and it defies logic that anyone believed the tweets from the first three days were anything other than parody.   Defendants' own reactions to the account belies this.   For instance, on May 10, two days prior to Plaintiff labeling the account parody, defendant Urich learned of the account via text message and, upon viewing the account, responded back "Fake site. No way it could be his."   [D.E. 28, ¶ 25.]   Plaintiff added the parody label to further *clarify* the innocent intent of his tweets in the three days prior and his tweets going forward; adding that label did not change the purpose of the account.   *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 583 n.17 (1994) ("Parody serves its goals whether labeled or not, and there is no reason to require parody to state the obvious (or even the reasonably perceived)."); *Farah v. Esquire Magazine,* 736 F.3d 528, 537 (D.C. Cir. 2013) (finding an author "can hardly be penalized for attempting to set the record straight and *avoid* confusion by those readers who did not at first 'get' the satirical nature") (emphasis in original).

"'Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known' to the officer *at the time he acts*."   *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010) (emphasis added) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).  By the time Defendants applied for the warrants, Plaintiff had clearly broadcast his innocent intent via the "parody" label.  Any reasonable officer would know Plaintiff's speech – in the first three days or otherwise – was innocent parody speech, and no reasonable officer could believe the "parody" label was irrelevant to the question of intent.  *See Olson v. Tyler*, 825 F.2d 1116, 1121 (7th Cir. 1987) ("only where a reasonable officer can conclude that a withheld fact is *irrelevant* to probable cause should such an officer who withholds a known (or recklessly

- 9 -

disregarded) fact be protected with qualified immunity.") (emphasis added).  Defendants' failure to include the parody label in their warrant applications was a material omission in violation of Plaintiff's Fourth Amendment rights.

Moreover, although an officer is not required to conduct further investigation upon finding probable cause, he cannot ignore new facts that would "clarify the situation" or negate probable cause.  *See McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009); *Nelson v. Vill. of Lisle, Ill.*, 437 Fed. App'x 490, 494 (7th Cir. 2011) (confirming and further clarifying *McBride*); *see also Mahnke v. Garrigan,* 428 Fed. App'x 630, 635 (7th Cir. 2011) (in determining probable cause, "a police officer cannot consciously disregard information that would bring clarity to a confusing situation"); *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.").  Thus, even if Defendants were initially confused about Plaintiff's intent, Plaintiff's marking the account "parody" dissipated any probable cause Defendants may have at one point possessed. Defendants were obligated to reevaluate whether probable cause existed and at the very least were obligated to include those relevant facts in their warrant applications. *See, e.g.*, *Overton v. Hicks,* No. 1:06–cv–1513–DFH–JMS, 2008 WL 2518229, at *10 (S.D. Ind. June 17, 2008) (denying summary judgment on false arrest claim because if defendant officer later learned facts negating criminal intent, "[those] new facts required [the officer] to reevaluate the reasonableness of his initial probable cause determination").

As Plaintiff's conduct was always innocent, labeling the account "parody" was not a curative measure marking the point where Plaintiff ceased engaging in criminal behavior or began attempting to mitigate criminal conduct.  Defendants' citations to *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 793 (7th Cir. 2002) and *People of Haissig*, 976 N.E.2d 1121, 1140-

41 (Ill. App. 2d Dist. 2012), cases holding that attempts by suspects to remedy or mitigate criminal behavior do not erase liability, are wholly irrelevant.

> ### 3. Defendants' Failures to Include Relevant Facts Known to the Officer Who Applied for the Warrants in the Applications Were Material Omissions.

Defendants are equally unsuccessful arguing that because detective Hughes, the author of several warrant applications, was an "acquaintance" of Mayor Ardis and not a member of the general public, Defendants' failure to disclose in their applications that Hughes knew from simply reading the tweets Mayor Ardis did not author them was a material omission. [D.E. 37, p. 8.]

First, Hughes not only admitted he knew that Mayor Ardis did not send the tweets but also acknowledged the account was a "parody", a point Defendants do not address. [D.E. 34, p. 8; D.E. 37, p. 8.]

Second, it is centrally relevant that the officer applying for the warrants withheld the fact that he knew simply from reading the tweets that Mayor Ardis did not write them. Disclosure of the instant recognition by the warrant author that the tweets were not written by Ardis would have further demonstrated Plaintiff made no attempt to actually deceive people into believing he was Mayor Ardis, lacked any intent to deceive, and that there was no probable cause to believe he violated the false personation statute. "[I]ntentionally or recklessly withholding exculpatory facts that would have influenced the warrant-issuing judge's probable cause finding" from the warrant applications is clear violation of Plaintiff's Fourth Amendment rights. *See Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010); *see also Olson v. Tyler*, 825 F.2d 1116, 1121 (7th Cir. 1987) ("Of course, a police officer who is objectively reasonable in seeking a warrant based on *truthful* and *complete* information is shielded from liability. But this standard does not neatly fit a

- 11 -

situation where a police officer knowingly omits from a warrant application facts that tend to negate probable cause.") (emphasis in original).

Furthermore, Hughes' own words undermine Defendants' claim that the omission was immaterial because Hughes was speaking as an acquaintance of mayor Ardis. This is not in the record. Indeed, when Hughes admitted to third parties he knew Mayor Ardis had not authored the tweets, he seemed to be speaking as a member of the public, not as a friend of Mayor Ardis: "my *public perception of the Mayor*, I would say that he's probably not the person responsible [for the Twitter account]. I would say with a great deal of certainty, a 100% deal of certainty, he's not the person that is on that site portraying those things." [D.E. 34, p. 8.] Defendants' unsupported suggestion further evidences the need for discovery.

Finally, it is irrelevant that a Peoria circuit court judge made several rulings against Plaintiff's roommate Mr. Elliot in a motion to quash subpoenas hearing for Mr. Elliot's state criminal case. Indeed, the best that the Defendants can come up with is the feeble assertion that their belief that Daniel violated Illinois' false personation statues is consistent "with the ruling of a state court judge." [D.E. 37, p. 5.] The citationless, oral findings of a state court criminal judge, made during a pre-trial motion to quash hearing in criminal proceedings to which Plaintiff was not even a party, should be given no weight whatsoever. This Court must make an independent evaluation of the facts of *this* case against careful consideration of the relevant case law.

    D.    **Defendant City of Peoria is Liable Under The Privacy Protection Act.**

Plaintiff has refined his Privacy Protection Act ("PPA") claim and now proceeds solely against Defendant City of Peoria ("Peoria"), which is liable for violations carried out by its officers and employees. 42 U.S.C. §2000aa-6 (a)(1). The PPA was enacted in order to "limit federal, state, and local government in their ability to procure search warrants to obtain work

product and other documentary materials in the possession of a person engaged in the dissemination of information to the public." S. Rep. 96-974, 4, 1980 U.S.C.C.A.N. 3950, 3951. The PPA does not only protect the press; it also protects against "the chilling effects of disruptive searches on the ability to obtain and publish information for all those who have a purpose to disseminate information to the public." S. Rep. 96-974, 9, 1980 U.S.C.C.A.N. 3950, 3956.

The PPA protects the files seized by the Defendants as work product, or documentary materials. *See* 42 U.S.C. §2000aa-7(a) & (b). Work product materials are drafts of communications to the public, for example draft songs or videos. 42 U.S.C. §2000aa-7(a). In this case, Plaintiff had drafts of songs and videos on his laptop and computer, unrelated to the Twitter account, which he intended to publish through the Internet. [7] [D.E. 28, ¶ 52.] Documentary materials are recordings like written materials or films. 42 U.S.C. §2000aa-7(b). Plaintiff had videos and other recordings on his computer. [D.E. 28, ¶ 52.]

In his AC, Plaintiff alleges that: (1) Defendant Hughes confiscated protected documentary and work product materials, [D.E. 28, ¶ 75]; (2) all Defendants knew that searching Plaintiff's home would involve searching for materials possessed by a person involved in public communication [*id.*, ¶ 74]; and (3) none of the exceptions which permit seizure of materials protected under the PPA apply [*id.*, ¶ 78].

Defendants argue that Plaintiff's PPA claim against Peoria should be dismissed as a matter of law because: (1) the PPA does not protect "persons like" Plaintiff or "the electronic communications at issue"; (2) probable cause defeats the PPA claim; (3) the "destruction of

---

[7] It remains unclear what documentary evidence of the Twitter account Defendants hoped to find on Plaintiff's computers. Because "tweets" consist of short, off-the-cuff remarks, and "draft tweets" can be saved on Twitter's server, there is no need for a user to create and/or store electronic files to their computer hard drives. In any case, if such draft tweets existed, they would meet the definition of work product materials under the PPA. Plaintiffs should be allowed to develop this in discovery.

evidence" exception under 42 U.S.C. §2000aa(b)(3) applies; and (4) Defendant Peoria has a "good faith" defense under 42 U.S.C. §2000aa-6(b).   [D.E. 37, pp. 11-12.]   All of these arguments are wrong.

### 1.        Defendant Peoria Cannot Invoke the Suspect Exception to the PPA.

Defendants claim Plaintiff was not entitled to PPA protection because he was a criminal suspect.  However, "the applicability of the suspect exception cannot be resolved on a motion to dismiss."  *Garcia v. Montgomery Cnty., Md.*, No. CIV. JFM-12-3592, 2013 WL 4539394, at *7 (D. Md. Aug. 23, 2013).   And here, Defendants cannot establish the two requirements of the "suspect exception" to the PPA on this motion.  *See* 42 U.S.C. §2000aa (a)(1) and (b)(1).  First, as argued in Plaintiff's prior brief [D.E. 31, Ex. 1, pp. 20-27], Defendants cannot establish the first requirement: that probable cause exists to believe Plaintiff committed a crime.  42 U.S.C. §2000aa (a)(1) and (b)(1); *see also Binion v. City of St. Paul,* 788 F. Supp. 2d 935, 948 (D. Minn. 2011) (denying summary judgment to defendants on PPA claim where materials were seized incident to plaintiff's arrest but fact issues remained as to whether probable cause existed for the arrest); *Benjamin v. Peterson,* No. CIV. 12-220 DWF/SER, 2013 WL 3097271, at *6 (D. Minn. June 18, 2013) (same).   And Defendants, on this motion, cannot establish the second requirement: that the seized work product or documentary materials related to the suspected crime.  42 U.S.C. §2000aa (a)(1) and (b)(1).  Indeed, Plaintiff has alleged that he had drafts of videos and songs on his computer [D.E. 28, ¶ 52]; there has been no allegation, or suggestion such material is related to the Twitter account.

### 2.        The Suspect Exception Does Not Apply When the Offense is Based on the Communication Materials.

Even assuming, *arguendo*, that Defendants could show that there were files on Plaintiff's computer relating to the allegedly criminal Twitter account, seizure of those files would still be

prohibited under the PPA.  The PPA protects people who are communicating with the public from the government seizing their materials based on "broad" and "contrived" offenses.  S. Rep. 96-974, 11, 1980 U.S.C.C.A.N. 3950, 3958.  Thus, the PPA provides that a defendant may not rely on the "suspect exception" when the offense is based on the communication materials themselves.  42 U.S.C. §2000aa(a)(1) (finding no exception "if the offense to which the materials relates consists of the . . . communication . . . of such materials or the information contained therein[.]").  Here, Defendants sought materials related to the Plaintiff's alleged violation of Illinois' false personation statute; the entire alleged offense is based on tweeting, a form of communication.  Therefore, if any materials on the computer or laptop were related to the tweets, they fall within the PPA's communication exemption.

> 3.     **The Destruction of Evidence Exception Does Not Apply to Work Product Materials and is Inapplicable to the Documentary Materials at Issue Here.**

Defendant Peoria is not insulated from liability under the "destruction of evidence" exception to the PPA.[8]  [D.E. 37, p. 12.]  Defendants argue that they could have "reasonably believed" that issuance of a subpoena would have caused Plaintiff to alter the Twitter account.  [D.E. 37, p. 12.]  This is a question of fact that cannot be resolved without discovery.  *See, e.g., Long Haul Inc. v. Regents of Univ. of California*, No. C 09-00168 JSW, 2009 WL 4546684, at *12 (N.D. Cal. Nov. 30, 2009) (refusing to resolve the applicability of another exception, the "prevention of death or serious bodily injury," on a motion to dismiss).  In any case, by the time of the house search, defendants had caused Twitter to close the account and Plaintiff could not alter it.  [D.E. 28, ¶¶ 35-40.]

---

[8] The exception allows for the seizure of documentary materials pursuant to a warrant where there is reason to believe that the issuance of a subpoena will result in the destruction, alteration, or concealment of those materials. 42 U.S.C. § 2000aa(b)(3).

Additionally, by its terms, the statutory exception does not apply to seizures of work product materials. *Compare* 42 U.S.C. §2000aa(a)(1)-(2) (exceptions for work product materials) *with* 42 U.S.C. §2000aa(b)(1)-(4) (exceptions for documentary materials); *see also* S. Rep. 96-974, 12, 1980 U.S.C.C.A.N. 3950, 3959 (aside from the "suspect exception" and for the prevention of death or serious bodily injury, "no other exceptions are provided for obtaining a search warrant for work product."). Thus, application of the "destruction of evidence" exception would only dispense with a portion of Plaintiff's PPA claim.

**4.  The "Good Faith" Defense Does Not Apply to Defendant City of Peoria.**

The "good faith" defense provided under 42 U.S.C. §2000aa-6(b) does not insulate Defendant Peoria from liability because by its terms, subsection (b) applies only to actions "brought under paragraph (2) of subsection (a)," which are actions against individual officers.[9]

**E.  Defendants Are Liable For Their Abuse Of The Judicial Warrant Process.**

Plaintiff has pleaded the elements of a cause of action for abuse of process: (1) that Defendants had an ulterior and malicious motive to use the judicial warrant process to chill Plaintiff's exercise of his First Amendment rights; and (2) that Defendants illegally obtained a series of search warrants (by intentionally withholding material information and making material misrepresentations) which they used to illegally search and seize Plaintiff's property and harass him into silence.  [D.E. 28, ¶¶ 80-85.]

Defendants claim that Plaintiff has not pleaded an ulterior purpose for Defendants' actions.  Not so.  The ulterior and collateral purpose of Defendants' actions was to coerce and extort Plaintiff into shutting down the parody Twitter account.  [D.E. 28, ¶¶ 26, 48].  Under the

---

[9] By contrast, actions against governmental units such as Defendant Peoria fall under paragraph (1) of subsection (a).  *See* 42 U.S.C. §2000aa-6(a)(1).

cases Defendants themselves cite, that purpose is sufficient to meet the first element of an abuse of process claim.[10]  *See* Restatement (Second) of Torts § 682 cmt.b (1977) ("The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it."); *Sweeney v. Flanagan*, No. 95-3586, 92 F.3d 1187, at *1 (7th Cir. July 23, 1996) (affirming dismissal of abuse of process claim where plaintiff "does not allege that the Defendants sought any collateral advantage from filing the RICO and slander of title suits").

Defendants' argument that Plaintiff cannot satisfy the second element of an abuse of process claim is equally meritless.  Plaintiff alleges that Defendants illegally searched and seized his private computers, telephones, and other electronic devices pursuant to improperly issued warrants.  [D.E. 28, ¶¶ 40, 43-51.]  Defendants' argument that Plaintiff cannot sustain his cause of action based on their false statements to the court in obtaining the search warrants is both misleading and wrong.   The abuse of process in this case lies not in Defendants' misrepresentations but rather in their very use of the judicial warrant process to chill Plaintiff's exercise of his First Amendment rights, an end that the judicial warrant process is not intended to achieve.[11]  In other words, Defendants could not force Plaintiff into silence through the regular course of civil or criminal proceedings so they manipulated the judicial warrant process to

---

[10] Defendants' throwaway argument regarding the limited scope of constitutional protection for defamatory speech is not only irrelevant to the issue of whether Plaintiff has adequately pleaded his claim but also wrong, as parodies such as the Plaintiff's Twitter account are not defamatory.  *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) (noting that statements that cannot reasonably be interpreted as stating actual facts about a public figure are constitutionally protected speech); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988) (public figures can recover for libel or defamation "only when they can prove *both* that the statement was false and that the statement was made with the requisite level of culpability") (emphasis in original).

[11] As Defendants' cited case law explains, abuse of process "means the perversion of it; i.e., accomplishing some illegal object or purpose for which such process was not legally intended."  *Dixon v. Smith-Wallace Shoe Co.*, 283 Ill. 234, 242 (1918)

achieve their ends.[12]   Because the judicial search warrant process is not intended to proscribe constitutionally protected speech, and Defendants have used it for such inappropriate purposes, they are liable for abuse of process and Plaintiff's claim should stand.

**F.    Plaintiff's False Imprisonment Claim Should Not Be Dismissed Because Defendants Cannot Establish Probable Cause Based On The Pleadings Alone.**

Defendants do not dispute that Plaintiff adequately pleaded the elements of a cause of action for false imprisonment.  [D.E. 37, pp. 17-18.]

Defendants' only stated basis for dismissal is their argument regarding the existence of probable cause.  Because Defendants cannot establish probable cause based on the facts alleged in the AC, their motion should be denied.[13]   *See Rhyan v. City of Waukegan*, No. 10 C 631, 2010 WL 5129736, at *3 (N.D. Ill. Dec. 9, 2010) (denying motion to dismiss false imprisonment claim where complaint adequately pleaded lack of probable cause); *Perry v. Sullivan*, No. 96 C 5899, 1998 WL 422281, at *2 (N.D. Ill. July 22, 1998) (denying motion to dismiss false imprisonment claim where probable cause could not be determined based on information contained in complaint).  Even in Defendants' cited cases, probable cause was not decided on the pleadings but rather after the parties had the opportunity to take discovery.  *See Reynolds v. Menard, Inc.*, 365 Ill. App. 3d 812, 822 (1st Dist. 2006) (probable cause determined after jury trial); *Poris v. Lake Holiday Prop. Owners Ass'n*, 2013 IL 113907, ¶ 64 (2013) (probable cause determined on summary judgment); *Fricano v. Chicago White Sox, Ltd.*, 2012 IL App (1st) 101978-U, ¶ 78 (1st Dist. 2012) (same).

---

[12] This situation was not present in the cases that Defendants cite.  *See Erlich v. Lopin-Erlich*, 195 Ill. App. 3d 537, 539 (1st Dist. 1990) (no abuse of process for using TRO to prevent spouse from secreting marital assets because that is the very purpose of a TRO); *Dixon*, 283 Ill. at 242 (no abuse of process where plaintiff failed to prove at trial that defendant wrongfully instituted legal proceedings to collect on an allegedly non-existent debt).

[13] Plaintiff incorporates the arguments regarding lack of probable cause set forth in Section VII of Plaintiff's corrected Opposition to Defendants' Motion for Judgment on the Pleadings.  [D.E. 44.]

### G.      Plaintiff Has Adequately Pleaded A Cause Of Action For Intrusion On Seclusion.

Plaintiff has pleaded all of the elements of a cause of action for intrusion on seclusion: (1) that Defendants entered and searched his private residence without permission or probable cause or any other lawful basis; (2) that Defendants' unlawful intrusion was unreasonable and highly offensive to any reasonable person; (3) that Defendants unlawfully seized the private contents of Plaintiff's phone, computer, and other electronic devices; and (4) that Plaintiff suffered mental anguish as a result of Defendants' unjustifiable actions.[14]   [D.E. 28, ¶¶ 96-100.]   *Burns v. Masterbrand Cabinets, Inc.*, 369 Ill. App. 3d 1006, 1012 (4th Dist. 2007) (listing elements of intrusion on seclusion claim and reversing dismissal of claim); *Melvin v. Burling*, 141 Ill. App. 3d 786, 789 (3d Dist. 1986) (same).

Defendants' argument that their conduct was not unauthorized or highly offensive merely because they sought search warrants is unavailing.  [D.E. 37, at 19.]  As alleged in the AC and as discussed in Plaintiff's briefs, Defendants had no probable cause or other legal basis to apply for, much less obtain, the search warrants in the first place.  [D.E. 28, ¶¶ 32, 36, 39, 49.]

Defendants' argument that Plaintiff failed to allege a cognizable injury [D.E. 37, p. 19] ignores the express allegations of Plaintiff's "mental and emotional distress, loss of appetite, insomnia, anxiety, discomfort, damage to reputation, and deprivation of his constitutional rights."  [D.E. 28, ¶¶ 58, 100.]  Plaintiff was also harmed by the seizure of his cell phone and electronic devices, which caused the loss of opportunity to engage in expression.  [*Id.*, ¶ 59.]

---

[14] Defendants' actions analogous to the offensive conduct identified in *Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill. 2d 411, 417 (1989), which Defendants rely on.  [D.E. 37, p. 19.]  In fact, Defendants' conduct is even more egregious because they consciously manipulated the criminal justice system to serve as both a conduit and shield for their illegal actions.

The notice pleading standards set forth by the Federal Rules do not require anything further and Defendants' intrusion on seclusion claim should stand.[15]

### H.       The Illinois Tort Immunity Act Does Not Shelter Defendants' Actions.

Defendants cannot hide behind the Illinois Tort Immunity Act because by its terms, the statute carves out any protection for "willful and wanton conduct."  745 ILCS 10/2-202; *see also Youker v. Schoenenberger*, 763 F. Supp. 361, 366 (N.D. Ill. 1991) (holding that tort immunity "does not extend to willful and wanton conduct or to acts by public employees based on corrupt or malicious motives").  Plaintiffs have alleged willful and wanton conduct [D.E. 28, ¶ 57], which only needs to be alleged generally.  Fed. R. Civ. P. 9(b).  Defendants' argument that their actions were not willful and wanton because those actions were supported by probable cause is not only unsupported but also should not be resolved on the pleadings because "[w]hether a person is guilty of wilful and wanton conduct is a question of fact for the jury and should rarely be ruled upon as a matter of law."[16]  *Robles v. City of Chicago*, 2014 IL App (1st) 131599, ¶ 17 (1st Dist. 2014); *Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir 2008) (whether officer acted in willful and wanton manner "is normally a question of fact to be determined by the jury") (internal citation omitted).

## III.   CONCLUSION

For the above reasons, Defendants' Motion for Judgment on the Pleadings should be denied.

---

[15] Plaintiff is not required to prove his injuries at the pleadings stage and Defendants' reliance on *Schmidt v. Ameritech Ill.*, 329 Ill. App. 3d 1020, 1036 (1st Dist. 2002) is misplaced because in that case, the plaintiff failed to prove his injuries at trial.

[16] In both of the cases cited by Defendants, the determination of probable cause was not resolved until summary judgment.  *See Boyce v. Fernandes*, 77 F.3d 946, 948 (7th Cir. 1996); *Mercado v. Village of Addison*, 385 Ill. App. 3d 1006, 1009 (2d Dist. 2008).

Dated:  December 17, 2014

Respectfully submitted,

JONATHAN DANIEL

By:      /s/ Everett J. Cygal
         One of his attorneys

Harvey Grossman
Karen A. Sheley
Roshni C. Shikari
ROGER BALDWIN FOUNDATION
OF ACLU, INC.
180 N. Michigan Ave., Suite 2300
Chicago, IL 60601-7401
Telephone:  312-201-9740
Fax:  312-288-5225
hgrossman@aclu-il.org
ksheley@aclu-il.org
rshikari@aclu-il.org

Marc O. Beem
Miller Shakman & Beem LLP
180 N. LaSalle St., Suite 3600
Chicago, IL 60601
Telephone:  (312) 263-3700
Fax:  (312) 263-3270
mbeem@millershakman.com

Everett J. Cygal
Jin Yan
Allison M. Nichols (admission pending)
Schiff Hardin LLP
233 S. Wacker Drive, Suite 6600
Chicago, Illinois  60606
Telephone:  (312) 258-5500
Fax:  (312) 258-5600
ecygal@schiffhardin.com
jyan@schiffhardin.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on December 17, 2014, he caused the foregoing Plaintiff's Memorandum In Opposition To Defendants' Supplemental Rule 12(c) Motion for Judgment on the Pleadings to be filed electronically using the CM/ECF system, which will send notification of such filing to the following:

> James G. Sotos
> Jaclyn McAndrew
> Jordan Erickson
> The Sotos Law Firm, P.C.
> 550 E. Devon Ave., Suite 150
> Itasca, IL 60143
>
> Ronald D. O'Neal, Jr.
> City of Peoria
> 419 Fulton St., Room 200
> Peoria, IL 61602

Dated:  December 17, 2014                     /s/      Everett J. Cygal